HAMMERSCHLAG MFG. CO. v. STRUTHERS–WELLS CO.

(Circuit Court of Appeals, Third Circuit. April 26, 1907.)

No. 7.

1. SALES—BREACH OF WARRANTY—INSTRUCTIONS—STATEMENT OF ISSUES.

The charge of a trial court in an action to recover the purchase price of an engine considered, and *held* to have fully and fairly submitted to the jury the issues raised with respect to the compliance of the engine with the warranty made in the contract of sale.

2. EVIDENCE—RELEVANCY TO ISSUES—COLLATERAL FACTS.

In an action to recover the purchase price of an engine built and installed by plaintiff in defendant's factory, in which the defense was the failure of the engine to comply with the warranty, evidence of the alleged unsatisfactory work of other engines built by plaintiff for other parties was properly excluded, where it was not shown that they were the same as the engine in suit, or that they were intended for like use or sold under a like warranty.

In Error to the Circuit Court of the United States for the District of New Jersey.

John Griffin and S. F. Kneeland, for plaintiff in error.

Herbert A. Heyn and Geo. B. Covington, for defendant in error.

Before GRAY and BUFFINGTON, Circuit Judges, and HOL-
LAND, District Judge.

BUFFINGTON, Circuit Judge.    In the court below the Struthers-
Wells Company, here called the plaintiff, brought suit against the
Hammerschlag Manufacturing Company, the defendant, to recover
$30,000, the purchase price for a gas engine furnished upon a written
contract.    The engine was built by plaintiff and erected in defendant's
factory.    The latter refused to accept or pay for the same, alleging
it did not comply with the contract.    After a trial lasting some three
weeks, there was a verdict for plaintiff for the full amount claimed.
    The record brought to this court is a voluminous one, and there
are 131 assignments of error.    On critical examination, the controversy
properly narrowed itself, and at the argument 78 of the assignments
were abandoned.    The remaining 53 resolve themselves into three con-
tentions:  First, the sufficiency of the court's charge as to the guarantied
fuel economies of the engine; secondly, its rejection of testimony as
to the Easton engines; thirdly, plaintiff's failure to furnish the reg-
ulator specified in the contract.    We deem it proper to say in regard to
this wholesale assignment of errors and the abandonment of the bulk
of them at argument that the wiser course is to confine the assignments
to such matters as on argument counsel will be justified in pressing.
    Without referring to other guaranties, the one material to the first
question is given below in an extract from the charge.    This guaranty,
it will be observed, called for the development of the horse power under
certain fuel economies.    The complaint of defendant is that by the
charge of the court and its omission to answer certain of its points the
jury were allowed to determine the case on the capacity of the engine
to develop the guarantied horse power, without reference to the re-
quirement that it should be under certain fuel economies.    If this was
the case, error was committed.    We have carefully and in detail ex-
amined every assignment of error and the testimony bearing thereon,
and are satisfied no error was committed by the court during this pro-
tracted trial.    In the character of the proofs given and in the rulings
of the court, all the provisions of this guaranty were constantly before
the court and jury, as essential requirements on the part of the plain-
tiff.    As the defendant prevented making subsequent tests, the tes-
timony as to the fulfillment of the guaranty was confined to the test
of May 12, 1903.    In his testimony Prof. Lucke, who conducted this
test for plaintiff, admitted plaintiff was bound to comply with the fuel
economies of the guaranty.    His evidence was that at the test he
stated to Mr. Richmond, who was overseeing it for defendant (the
fuel economy requirement):

"I outlined the test as I understood the requirements the contract called
for.    Question. What did you say about it?    Answer. I said: 'As I interpret
this contract guaranty, this engine is to be operated for a period of three
hours, during which time we are to determine how much coal is used to pro-
duce 800 indicated horse power.  This involves the measurement of the speed,
the taking of indicator cards, of the mean effective pressure.    It involves also
the measurement of the coal and gas producers.' "

On the trial proof was made of the amount of fuel used at the test. Indeed, it is apparent from an examination of all the testimony that the various elements of this guaranty, including that of fuel economies, were constantly called to the jury's attention. Now the judge at the outset of the charge called attention to this guaranty in ipsissimis verbis. He said:

"We find,·then, that on May 5, 1903, a contract in writing was made between the plaintiff and the defendant. What are the provisions of that contract that you ought to keep in mind as you take up the facts to consider them? It will not be necessary to read the whole contract to you, but, in order that your memories may be refreshed as to the material contents of this contract, I will read to you the portions that I think you ought to give special attention to, though I by no means mean that you should not consider the whole contract, examining it for yourselves, and giving attention to the whole of it. What I will call your attention to are these provisions."

He then read pertinent parts and said:

"Then, still further along in the contract, follows what is denominated the 'guaranty.' It is not necessary to read the whole of it, but I will read this part: 'We guaranty this engine to be capable of developing 800 indicated horse power for a period of three consecutive hours, at a specified rate of speed' (which you will remember is one hundred and eighty revolutions per minute), 'operating on producer gas of good quality, manufactured by the Taylor Gas Producer, and containing not less than 125 B. T. U. per cubic feet. The quantity of such gas consumed not to exceed eighty cubic feet per indicated horse power developed per hour, or not to exceed the ·amount produced by the Taylor Gas Producer from one pound of best quality No. 1 buckwheat anthracite coal; the engine in each case operating under full load.'"

It will thus be seen the attention of the jury was thus pointedly directed to this guaranty. The court then called special attention, under the inquiry, "What has the defendant set up that you must consider?" to the questions which, under the statutory defenses of New Jersey, the jury· was to consider, and sent out the pleas with them, which, inter alia, averred that:

"The engine was incapable of developing 800 indicated horse power for a period of three consecutive hours, at the specified rate of‚ speed, operating on producer gas of good quality, manufactured by the Taylor Gas Producer, and containing not less than 125·B. T. U. (British Thermal Units) per cubic foot, and the quantity of such gas consumed exceeded 80 cu. ft. per indicated horse power developed per hour, and exceeded the amount produced by the Taylor Gas Producer from one pound of best quality No. 1 buckwheat anthracite coal; the engine in each case operating under full load."

The jury's special attention was called to these pleaded defenses,. and the court said:

"By the removal of the engine from the cars, and the erection of the same on defendant's foundation, the defendant did not waive the right to reject the engine, if it should appear at any time thereafter that the engine was incapable of fulfilling the terms of the guaranty concerning which a defense has been raised in the pleadings."

It further said:

"The next point is as to the question whether or not the engine was capable of developing an indicated horse power of 800. In a general way it is true that the plaintiff must prove his case, and that is true here. The defense has by its pleas raised the questions as to which a contest is made. As to these points the burden of proof is first on the plaintiff. The plaintiff must satisfy

you by a preponderance of evidence that it has complied with its contract in respect to the points raised by the defense. That is the rule of law."

Further on, referring to the test, the court, in calling attention to different features, said: "What about the gas producers?" And "in the making of any test the plaintiff was entitled to a fair opportunity to demonstrate the capability and economy of the engine," and the jury were expressly told that:

"If this engine was not capable of developing eight hundred indicated horse power, and did not comply with the other provisions of the contract concerning which a contest is made here, then, of course, you must find against the plaintiff."

And in answer to a request by a juror for the contract, the court instructed them they should take it and the pleadings also. In view of the proof being addressed, inter alia, to the item of fuel economies, the stress that was laid on every provision of this guaranty, the reading of it to the jury, and calling attention to the pleas as specifying the questions they were to determine, there is no doubt the jury understood the guaranty meant what it said, and that the plaintiff was bound to comply with the guarantied fuel economies. Indeed, it is quite clear that, from the course this very protracted case took, the words of this guaranty, including horse power and economy tests, were by constant repetition from day to day so impressed on the minds of counsel and the jury when the trial judge charged that it had merely to allude to the 800 horse-power test to bring before the minds of both jury and counsel each and every term of the guaranty, which by that time all of them would almost know by heart. In a long trial, such as this, a judge may in charging overlook some details, but the omission of counsel to call attention to it is suggestive that he did not regard such omission as material, or as tending to withdraw any issue from the jury. It is, however, insisted that in the defendant's first three points the court's attention was called to the fuel requirements, and its omission to answer them was error. We cannot so regard the court's action. In the first place, the points were not specifically addressed to the fuel economies, but to the guaranty as a whole. They wholly ignored the important feature whether the defendant had prevented a fair test on May 12th, and whether the plaintiff was not entitled to another trial. A categorical answer to them as stated would have misled the jury, because it would have ignored defendant's conduct with reference to the test. There would, therefore, have been no error had the court refused them. But the exact language of them all had already been used by the court in its general charge, as we have quoted above, and the jury instructed that the burden of proof to show compliance was on the plaintiff. But the jury's attention was also called, as was proper, to the modifying fact of the defendant preventing a fair test, if it did so. That the defendant regarded the court as having treated the subject-matter of the points in the general charge is shown by the exception taken at the time, not to a refusal or even an omission to answer, but "to the charge of the court modifying the defendant's request to charge found in the first, second, and third requests to charge."

After careful consideration, we are of opinion there was no act of omission or commission by the court in reference to the guarantied fuel economies which warrants reversal of the judgment.

As to the second contention, we think the court rightly rejected the testimony of the alleged unsatisfactory work, after the contract in suit was made, of two engines at Easton. These engines were built by plaintiff for a street car system., There was no proof that they were the same as the one in suit, that they were intended for like use, or that they were operated under the conditions of this guaranty. To admit such testimony would be to try issues not involved in this case, and would have tended to mislead the jury from those issues.

It is contended, as to the third point, the plaintiff did not furnish the regulator specified in the contract, but there was evidence to show that another, and alleged better, make was furnished after consultation with defendant. There was proof to show the substitution was made with its consent.

Without entering into a discussion in detail of the very numerous assignments, we may here say they have each received careful individual examination, and we find nothing to warrant our disturbing this verdict.

The judgment is therefore affirmed.