PORATH *v.* VILLAGE OF HIGHLAND PARK.

1. MUNICIPAL CORPORATIONS — SEWER CONTRACT — SUBSTANTIAL COMPLIANCE—APPROVAL OF ENGINEER—ARBITRARILY WITHHOLDING APPROVAL.

Although a sewer contract provided that the work should be done to the satisfaction of the village engineer, where there were attached to the contract plans and specifications which provided in detail what should be done, the contractor was entitled to the approval of the engineer on substantially complying with the terms of the contract.

2. SAME—COMPLIANCE WITH CONTRACT—QUESTION FOR JURY.

As to whether there had been a substantial compliance with the contract, *held*, under the evidence, a question of fact for the jury.

3. SAME—EVIDENCE—EXPERT TESTIMONY—COLLATERAL ISSUES.

Expert testimony on the part of plaintiff to the effect that vitrified segment block sewers (the kind specified by defendant) had been failures in certain cities, *held*, objectionable, since it raised collateral issues difficult for defendant to meet.

4. SAME—CONTRACTS—ENGINEER AGENT OF VILLAGE.

A provision in the contract that the contractor should "carry on the work under the supervision and direction of the village engineer," made the orders and directions of the engineer those of defendant.

5. SAME—EVIDENCE AS TO APPROVAL OF ENGINEER—ADMISSIBILITY.

It was competent for the plaintiff to show that he had done the work in such manner as to gain the approval of the engineer, which was one of the things the contract provided he should do, although the contract provided that the work was also subject to the approval of the council.

6. COSTS—SUPREME COURT RULE.

Although defendant was entitled to costs, where little, if any, effort was made to comply with Supreme Court Rule No. 40, requiring the brief of the party bringing the cause into this court to contain a clear and concise statement of

the facts distinct from argument, etc., the cost of printing
its brief will be excepted.

Error to Wayne; Mandell (Henry A.), J. Sub-
mitted June 9, 1920. (Docket No. 16.) Decided Sep-
tember 30, 1920.

Assumpsit by Julius Porath against the village of
Highland Park upon a paving contract. Judgment
for plaintiff. Defendant brings error. Reversed.

    *Claude H. Stevens*, for appellant.
    *John E. Moloney*, for appellee.

BIRD, J. Early in 1914 defendant submitted plans
and specifications for bids for the construction of a
sewer extending across the village from north to south
on Oakland avenue, a distance of 8,530 feet. Plain-
tiff's bid was accepted and a contract made with him
on June 24, 1914, with the plans and specifications
made a part thereof. The contract called for a 48-
inch sewer for about one-half of the distance, a 42-
inch sewer for one-quarter of the distance, and for the
remainder a 36-inch sewer, the entire sewer to be con-
structed of vitrified segment block. Plaintiff pro-
ceeded with the work and by the first of the following
year he had it nearly completed. Before its final com-
pletion, however, the defendant became dissatisfied
with the manner in which the work was being done,
and took over the work and finished it, and, in addi-
tion, reconstructed a small portion of the 42-inch sewer
and nearly all of the 36-inch sewer. It was the claim
of the village that these portions were so defectively
constructed that they spread at the springing line,
thereby allowing the top of the sewer to fall in, and
that the failure of the sewer was due wholly to poor
workmanship and defective blocks. It is the claim of
the village that it expended upwards of $14,500 in

bringing the sewer up to contract specifications, and on the trial it attempted to offset this sum against plaintiff's claim.

Plaintiff contended that whatever defects existed in the sewer were due to design and selection of materials. In short that a good sewer could not be constructed of the vitrified segment block, which was stipulated for in the contract. This was the issue tried out in the trial court. The jury took plaintiff's view of it and awarded him, the full amount of his claim, with interest, amounting to $21,754.76.

1. A directed verdict for defendant at the close of plaintiff's case was requested on the ground that his proofs failed to show that the work was done to the satisfaction of the village. In urging this point, counsel asserts that plaintiff's own testimony showed that 85 feet of the sewer was defective, and that no approval of the village was shown. That under these circumstances it was incumbent upon plaintiff, in making his case in chief, to show that the approval of the village was captiously and arbitrarily withheld. The portion of the contract which controls this phase of the case provides that:

"It is further agreed between the parties hereto that all of the work to be performed by the second party under and pursuant to this contract shall be done and performed to the satisfaction of the said village engineer and village council."

Attached to the contract were plans and specifications which provided in detail what should be done, the size of the sewer, the materials out of which it should be constructed, and the manner of constructing it. This, together with other requirements of the contract, indicate that the parties never contemplated that the contract should be brought within the class of satisfaction contracts in which the taste or judgment of one of the parties is made the sole basis of acceptance

or rejection. The terms of the contract place it among' the class of satisfaction contracts, which hold that when the contractor in furnishing materials and in performing the work has substantially complied with the terms of the contract, he is entitled to the approval of the other party. Such cases are *Schliess* v. *City of Grand Rapids,* 131 Mich. 52; *Algate* v. *City of Lansing,* 180 Mich. 484.

Under this view of the contract it was a question of fact whether, under the proofs, there had been a substantial compliance with the contract. Upon this question plaintiff's testimony made a case for the jury. The trial court was in no error in refusing the request for a directed verdict.

2. Expert testimony to the effect that vitrified segment block sewers had been failures in certain cities in the United States and Canada was admitted in evidence, followed by the opinion of the expert that such failures were due to the unfitness of the vitrified segment block for sewer purposes. It is argued that the admission of this testimony was error. We agree with defendant's contention in this respect. This testimony raised collateral issues, which it was very difficult for defendant to meet. It raised an issue as to each sewer mentioned whether it was constructed under similar soil and other conditions, whether the blocks were similar in quality, and after this whether the failure was due to defective material or poor workmanship. Commenting on this class of testimony it is said by Rogers in his work on expert testimony that:

"While the opinion of experts may be based on their observation and experience in similar cases, yet the principle is well settled that such witnesses cannot, on their direct-examination, be questioned concerning the particular cases which have happened to come within their observation, and which have no connection with the case in hand. The reason for the rule is mani-

festly to prevent the introduction of innumerable side issues, which might render the trial of a cause interminable, distract the attention of the jury from the real issue, and render the costs in the case unnecessarily burdensome and enormous. Different experts might have different theories, and each theory might be founded on the observance of several and distinct cases, each of which the opposite party would have a right to controvert. And inasmuch as a party would be unable to anticipate the cases which the experts on the other side would mention, he would be unable to prepare for their investigation, and would, therefore, be unable to properly avail himself of his right to controvert them. Rogers on Expert Testimony, § 35."

This paragraph was approved in *People* v. *Holmes*, 111 Mich. 364, where the same question was discussed. See, also, *Jamieson* v. *Railway Co.*, 147 N. Y. 322 (41 N. E. 693) ; *Emerson* v. *Lowell Gas Light Co.*, 3 Allen (Mass.), 417; *Hammerschlag Manfg. Co.* v. *Struthers-Wells Co.*, 83 C. C. A. 198, 202, 154 Fed. 330; *Crane* v. *Valley Land Co.*, 203 Mich. 359. The admission of this testimony was harmful to defendant's case, as it bore directly upon the vital point in issue. Its admission was reversible error.

3. It appears that some question arose during the progress of the work whether certain blocks which were on the ground should be placed in the sewer. The village engineer was appealed to, and after an inspection of them, he directed the plaintiff to use them. The defendant contended that even if the engineer did direct their use the council was not thereby bound. He based this upon paragraph (*d*) of the contract, which follows:

"*d.* To do all work in a thorough and workmanlike manner and conform in every particular to the plans, specifications and directions of the village engineer and village council and to carry on the work under the supervision and direction of the village engineer and the duly authorized superintendents and in-

spectors of the village council, and at such points or places as the said village engineer shall, from time to time, direct."

Upon this phase of the case the trial court instructed the jury that:

"I wish to say in that connection that under the terms of this contract it became the duty of the plaintiff to see that none except blocks that met with the requirement of clause 5 were used, and he would not be excused in using defective blocks, even though they had passed the inspection of the inspectors of the village of Highland Park. There is just one exception to that, and that is in the case of a portion of the 42-inch sewer; it was claimed by the plaintiff and I think established by the evidence, that when a dispute arose as to whether or not certain of the blocks that were about to be used met the requirements of this clause, the matter was referred to the city engineer. It is claimed, at least by the plaintiff that he proceeded to insert and use those blocks in the construction of that portion of the sewer under the express direction and commands of the engineer.

"If that contention is established by the proofs and by a preponderance of proof, then I charge and instruct you that, under another clause which gave supervisory powers to the engineer, if those blocks— these particular blocks—afterwards proved defective, and were the cause of breaks or the disjointed condition of the sewer, that the contractor would not be responsible."

It will be observed that the trial court drew a distinction between materials which went into the sewer, by express direction or permission of the engineer, and those which were furnished and used by plaintiff in the ordinary course of construction. The distinction appears to be well taken. The same distinction was pointed out in *Boots* v. *Steinberg*, 100 Mich. 134, where it was said:

"This contract clearly required that the work should be done to the satisfaction of the owner or his super-

intendent, as it progressed, and that it should not be fully paid for until completed to the satisfaction of the owner. Some of the matters complained of were, according to our view of the evidence, approved by the owner and the superintendent, as the building went up. We think that was true of the concrete footings, which were not constructed according to the specifications, but which were discussed, and the course taken acquiesced in. There might be some force in the contention that the same is true of the construction of the flues, as to lining and rubbing, were there evidence that it was knowingly permitted, or if the facts were such as to make it plain that the owner or superintendent must have acquiesced. To go further, and say that the fact of such construction without interference is conclusive of the question of approval, would be, in effect, to say that whatever the contractor could succeed in doing must be taken as approved,—a proposition that would put such a premium upon bad faith as to be untenable. While the contractor may rely upon what was actually approved under the contract, he is supposed to understand the specifications and how the work should be performed as well as the superintendent, and as well as, if not better than, the owner; and he cannot be permitted to invoke the doctrine of estoppel where some of its elements are lacking, making it 'a sword, and not a shield.' "

In *Lamson* v. *City of Marshall*, 133 Mich. 250, the distinction is again made.

It will hardly do to say that if the contractor follows the directions of the engineer he will incur the same liability as he would should he refuse to follow his directions. The contract provides that the contractors shall "carry on the work under the supervision and direction of the village engineer, etc." When the council so contracts, it makes the orders and directions of the engineer its orders and directions, and cannot thereafter complain because the orders and directions were obeyed.

4. Error is assigned upon the following instruction:

211—Mich.—31.

"It is claimed on behalf of the plaintiff, that the plaintiff, having done this work from day to day, under inspection of the village engineer, and an inspector appointed by him, that the village is estopped from complaining that the work from time to time was not done in accordance with the plans and specifications. I charge and instruct you, as a matter of law, that that is not true, but the fact that the engineer at times was on the work, saw what work was to be done, and the fact that the inspector was there constantly, or almost so, may be taken into consideration by you as evidence on the question—the disputed question, as to whether or not the work was done in all respects in accordance with the terms of the contract and specifications."

Attention is called to the fact that the provisions of the contract under consideration provide that the council, as well as the engineer, shall accept the work, and that even though the village engineer should accept the work, the council would still have a right to reject it. This, perhaps, is true, but we think that what was done in connection with the work by the engineer and inspector was admissible, as the court stated, upon the question whether the work was done in accordance with the contract. It was certainly competent for the plaintiff to show that he had done the work in such a manner as to gain the approval of the engineer, because that was one of the things his contract provided he should do. The mere fact that he had been unable to get the approval of both the council and engineer would not preclude him from showing that his work had the approval of one of them.

There are further complaints concerning the charge of the court but we think they are not well taken. The charge was a very clear exposition of the law governing the rights of the parties and was doubtless of great assistance to the jury in reaching a conclusion. The assignments already considered will make it unnecessary to discuss the remaining ones. For the

error in admitting the expert testimony the judgment must be reversed and a new trial granted. Defendant will recover its costs in both courts, except the cost of printing its brief. This exception is made because counsel made very little, if any, effort to comply with Rule 40 of this court.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.