L. W. KINNEAR, INC., *v.* CITY OF LINCOLN PARK.

1. MUNICIPAL CORPORATIONS—LIABILITY OF CITY UNDER SEWER CONTRACT—ESTOPPEL.

   Where city was named as one of parties to sewer contract, received benefits thereof, and during course of construction and subsequent thereto it acted as though it were party to contract, it is estopped thereby from afterward denying liability thereunder, although contract was signed by owners of subdivision and city did not sign it.

2. SAME—TRIAL—ISSUES OF FACT—DIRECTED VERDICT.

   Where, in action by contractor on sewer contract, there was conflicting testimony on material issues of fact presented upon question as to whether collapse of part of sewer was due to faulty design or improper plans and specifications, for which city was responsible, or to improper installation or poor workmanship, for which contractor was responsible, trial court was in error in directing verdict which in effect was holding of law that contractor was chargeable with responsibility for loss.

3. SAME—WAIVER.

   Trial court's refusal to submit to jury as issues of fact whether city had accepted work done on sewer by contractor and was thereby foreclosed from questioning performance of contract in accordance with its terms, or whether city waived provision of contract that there should be no claim for extras unless ordered in writing by engineer, *held*, correct, in view of express terms of contract.

4. SAME—SEWER CONTRACT—COST OF REPAIRS.

   Contractor's claim that use by city of cement tubing instead of cement blocks in repairing sewer prevents city from recovering cost of repairs, on ground that method of making repairs was not that specified in contract, *held*, without merit, where undisputed testimony shows that cost of repairs would have been greater had cement blocks been used instead of cement pipes.

On estoppel of public corporation to deny validity of contract, see annotation in L. R. A. 1915A, 990, 1002.

Appeal from Wayne; Pugsley (Earl C.), J., presiding. Submitted June 22, 1932. (Docket No. 172, Calendar No. 36,249.) Decided October 3, 1932. Rehearing denied December 6, 1932.

Assumpsit by L. W. Kinnear, Incorporated, a Michigan corporation, against City of Lincoln Park and others on a sewer construction contract. From directed verdict and judgment for plaintiff for part of its claim, plaintiff and 'defendant city appeal. Reversed and new trial granted.

*Robert J. Hanley* and *John G. Dunn,* for plaintiff.

*Larry S. Davidow,* for defendant city.

*Robert M. Brownson* and *Kenneth Murray,* for defendants Wallace & Richardson.

NORTH, J. In August, 1926, plaintiff, a Michigan corporation, entered into a contract with defendants for the construction of 15,000 feet of lateral and trunk line sewer. Claiming performance of its contract, plaintiff brought this suit to recover a claimed unpaid balance on the contract price of $5,938.20; also to recover $9,854.74 which plaintiff claims is due it because defendant changed the method of operation in constructing the sewer from that contemplated when the contract was signed to a more expensive method of installation claimed to have been ordered by defendants' engineer; and to recover the further sum of $2,114.58 for repairs which plaintiff claims it made to the sewer subsequent to its completion.

The defense urged is that plaintiff did not perform its contract and that it refused to complete the sewer in accordance with the contract and specifications; that its work was not performed in a thorough

and workmanlike manner and in accordance with the plans and specifications. Defendants urge that, because of plaintiff's failure to properly perform its contract, expenses were incurred in repairing and replacing portions of the sewer incident to which $5,974.54 was expended. This was pleaded as a set-off, and affirmative judgment asked.

At the close of the proofs verdict for plaintiff was directed in the sum of $1,857, with costs to be taxed. In arriving at this result the circuit judge disallowed plaintiff's claim of $9,854.74 for extra expenses of construction, and also disallowed the $2,114.58 for repairs, and deducted from the $5,938.20, which plaintiff claimed as the balance of the contract price, the amount the court found defendants had paid for repairs and to complete construction in accordance with the terms of the contract. This left a net balance, which, with accrued interest, totaled $1,857, for which verdict for plaintiff was directed. Plaintiff and the defendant city of Lincoln Park have appealed.

The city urges as a defense that it is not a party to the contract and is not bound thereby. The defendants Harvey B. Wallace and Henry Richardson were the owners of the subdivision in which the sewer was constructed. The written contract for the work was signed by them, but not by the city. However, the contract as drafted names the city of Lincoln Park and Wallace & Richardson as parties of the first part; and attached to the contract are specifications in which the city is referred to as the "first party." The trial judge held that because the city had received the benefits of this sewer construction, and during the course of construction assumed and acted as though it were a party to the contract, as well as since the construction, that the city is estopped from denying liability.

The city did not specifically deny by its plea or by its notice of special defenses that it was a party to the contract. On the contrary, in defendants' notice of special defenses, it is alleged:

"Said defendants will show   *   *   *   that on the 12th day of August, 1926, the said plaintiff entered into a certain written contract with said defendants, a copy of which is attached hereto."

The bond accepted incident to the construction of this sewer ran to the city of Lincoln Park, as well as to the defendants Wallace & Richardson. Unquestionably Mr. Pate, who as engineer supervised and controlled this sewer construction, represented both the city and Wallace & Richardson; and when the question arose of changing from segment block to the use of concrete pipe, Mr. Pate testified: "I told him (plaintiff's president) I would take the matter up with the committee;" and that he did so. Even after plaintiff had discontinued work on this sewer and on August 1, 1927, the city council unanimously passed a resolution notifying plaintiff and its surety:

"To start work on the repairing and completion of sewers   *   *   *   covered by the contract in which the city of Lincoln Park and Wallace & Richardson are parties of the first part."

The city owns the sewer constructed under this contract, it has used it, had it repaired and seems to have taken it fully under city control. Defendants' witness, city engineer Pate, on direct examination, testified that the sewer here in suit "completed a sanitary trunk line system of Lincoln Park." The city under its charter had power to contract for the construction of sewers, and even though this power was irregularly exercised it is nonetheless obligated. The city's contention that it

cannot be estopped from disavowing liability on the ground that the contract was not consummated in accordance with the charter provision is without merit.

"Where the power exists in a municipal corporation to bind itself, where the contract is *intra vires,* it will be bound even though it may have proceeded irregularly and in disregard of directory provisions as to the exercise of its power." *Commercial State Bank of Shepherd* v. *School District* (syllabus), 225 Mich. 656.

"A municipality cannot retain the benefits of a contract which has been fully performed by the other party, and which is neither *malum prohibitum* nor *malum in se,* and at the same time deny· the validity of the contract because of defects in the manner of its execution." *Coit* v. *City of Grand Rapids* (syllabus), 115 Mich. 493.

See, also, *Carey* v. *City of East Saginaw,* 79 Mich. 73.

The circuit judge was right in holding that the city will not now be heard to disavow liability under the contract, or at least liability under the common counts in plaintiff's declaration, if any such liability is established by the proofs in the case.

Before stating or considering the various grounds of plaintiff's appeal, it will be helpful to note certain important provisions of the contract. Plaintiff agreed to furnish all the materials, tools, and labor necessary to complete on or before November 15, 1926, in every detail the construction of this sewer "to the satisfaction and acceptance of the party of the first part by its engineer, Edwin H. Pate, all according to plans and specifications." The contract further provides:

"It is expressly understood and agreed that the entire work shall be done in a thorough, workman-

like manner under the direction of the engineer. All loss or damage arising out of the nature of the work or any detention or other unforeseen obstruction or difficulties which may be encountered in the prosecution of the work or from any action of the elements shall be borne by the contractor. * * *

"Any unsatisfactory work that may be discovered before the work is finally completed and accepted shall be corrected by the second party. * * * Any inspection or passing by an inspector does not relieve the contractor from any obligation in this respect.

"No claim for extra work shall be allowed, made or entertained unless such work shall have been ordered in writing by the engineer.

"Said first party or its engineer shall have the right to make any alterations in extent, dimensions, form or plans of work, either before or after commencement of the work. If such alterations diminish the quantity of the work, the price will be diminished proportionately and if the work is increased, the price will be increased proportionately. * * *

"Any doubt as to the meaning of this contract, specifications or drawings shall be interpreted by the engineer, who shall have the right to correct any error or omission necessary to the fulfillment of their evident intention.

"And, it is further understood and agreed that the first party, its engineer or authorized agent, shall have the right to suspend the operation of this contract and to annul the same whenever the second party shall fail to prosecute the work with satisfactory progress or to comply with all and singular the terms and stipulations as herein set forth."

The specifications attached to the contract contain the following:

"*Trenching:* The trench for the sewer shall be dug so as to conform to the grades and lines given

by the engineer. The bottom of the trench shall be cut so as to fit the outside of the sewer up to the point where the arch begins in solid ground, but in quicksand or treacherous ground, the trench shall be excavated to such a depth below the grade line and width along the sides of the sewer as the engineer may direct, and the portion so excavated shall be filled up to the grade line and along the sides of the sewer with broken stone or concrete, as the engineer may direct. * * *

"In case the ground is deemed unfit for foundation by the engineer, a six-inch concrete foundation or other suitable foundation shall be placed under and, if necessary, around the sewer as may be directed by the engineer. * * *

"*Segment block sewer:* Where sewers are constructed of this material they shall * * * be laid and shall conform to the maker's specifications. Where deemed necessary by the engineer, a covering of concrete shall be placed around the sewer. * * *

"The decision of the engineer on all matters connected with the various works shall be final and conclusive whether as to the measurement of the work, quantity and quality and other matters and things which may be in dispute. * * *

"The payment of these estimates, however, does not imply that any portion of the work is accepted. * * *

"Bidders are invited to examine the plans to make their own estimates of the quantities of the work to be done, also to examine the location of the works and judge for themselves of all circumstances affecting the cost of the work and the time required for its completion."

In the course of the performance of plaintiff's contract rainy weather seriously interfered with the work due to the fact that the yellow clay soil with a substrata of plastic blue clay rendered construc-

tion precarious after excessive rainfall. At first plaintiff was able to use a trench machine which made a narrow excavation with straight sides. Later conditions necessitated the use of a pull-shovel which excavated a somewhat wider trench. Between November 11th and December 7th conditions encountered were such because of rainy weather and the clay soil that a dragline machine which excavated a V-shaped cut was used. About 810 feet of sewer was laid in this manner. The type of sewer installed was the so-called egg-shaped, constructed in segments composed of cement blocks. Before formal acceptance of the completed sewer certain portions collapsed. On three occasions plaintiff repaired the collapsed portions; but refused to make further repairs. Each collapse occurred in the section where the drag-line machine was used and where the cement blocks were laid by experts sent to the job by the manufacturer of the blocks.

Plaintiff claims that the collapse of the different portions of its sewer was not the result of its being improperly installed, as defendants assert; but, instead, that it was due to the use of an improper type and design of sewer unsuited for use under existing conditions, and to defects in the plans and specifications and in the method of construction required by defendants' engineer. On this phase of the case plaintiff says an issue of fact for the jury was presented, and that the trial court erred in holding as a matter of law that the collapse of the sewer was due to poor workmanship, or at least to conditions and circumstances which under the terms of the contract rendered plaintiff responsible for the loss. In this connection plaintiff asserts that by the contract defendants specified the design and type of the

sewer to be constructed. The portion involved in this suit was to be egg-shaped and constructed of 30-inch segment blocks. Plaintiff's position is that since defendants designated in the contract the type and design of the sewer, they thereby warranted the type and design as being adequate and suitable for the proposed use under the existing conditions, and if (as plaintiff claims and some testimony tends to show) the collapse of the sewer resulted "from the design, type and specifications" of the sewer, then the loss must be borne by defendants. Plaintiff cites and relies upon: *United States* v. *Spearin,* 248 U. S. 132 (39 Sup. Ct. 59); *Bush* v. *Jones,* 75 C. C. A. 582, 144 Fed. 942 (6 L. R. A. [N. S.] 774); *Mac-Knight Flintic Stone Co.* v. *Mayor, etc., of New York,* 160 N. Y. 72 (54 N. E. 661); *Filbert* v. *Philadelphia,* 181 Pa. 530 (37 Atl. 545); *Bentley* v. *State,* 73 Wis. 416 (41 N. W. 338); *Passaic Valley Sewerage Com'rs* v. *Tierney* (C. C. A.), 1 Fed. (2d) 304; *Schliess* v. *City of Grand Rapids,* 131 Mich. 52; *Porath* v. *Village of Highland Park,* 211 Mich. 475; *Friederick* v. *Redwood County,* 153 Minn. 450 (190 N. W. 801); and other like decisions. If plaintiff is right as to the facts, we think it is right as to the law.

The record discloses other controverted issues of fact that are material. Defendants' claim that the unfavorable weather and soil conditions were encountered because of plaintiff's negligent delay in prosecuting the work, and that it is admitted the type of sewer specified is proper for installation under favorable conditions, and in fact that it can be used under the conditions here encountered if the sewer is properly constructed. On the other hand, plaintiff asserts as a fact that the delay was caused by the order of defendants' agent to suspend work

due to the unfavorable conditions and the danger of collapse of the sewer; and that later plaintiff was ordered by defendants' engineer to proceed with the work as per contract notwithstanding plaintiff wanted to await more favorable conditions and proposed to substitute concrete tubes in the place of the segment block construction. Here another material controverted issue of fact arises from defendants' claim that the engineer did not unqualifiedly direct plaintiff to proceed with the work or require plaintiff to continue to use segment blocks, but, instead, that the engineer referred the matter to "the committee," and while it was being considered, plaintiff decided it was to its financial advantage to proceed with segment block construction. As to its being possible to construct the segment block sewer under existing unfavorable conditions, Mr. Kinnear testified:

"*Q.* Is it a dry weather operation to lay segment block?

"*A.* Yes, sir.

"*Q.* Is it possibly conceivable to lay it in wet weather, with water dripping down on the joints?

"*A.* No; the water has a chance to wash it out and undermine it in any way."

To the contrary, one of defendants' witnesses, Mr. Delano, testified that a satisfactory sewer could be constructed of segment blocks "laid in this kind of soil, under similar weather conditions.  *  *  *  As good a sewer  *  *  *  as a pipe sewer."

There was conflicting testimony on each of these phases of the case. Thus it appears that material issues of fact were presented bearing upon the question as to whether the collapse of the sewer was due to faulty design or improper plans and specifications for which defendants were responsible, or to im-

proper installation or poor workmanship which rendered plaintiff responsible. We think the circuit judge was in error in directing a verdict, which, in effect, was a holding of law that the plaintiff was chargeable with the loss.

Since there must be retrial, we may add that under this record, especially in view of the express terms of the contract, the trial court correctly refused to submit to the jury as an issue of fact whether the city had accepted the work done by plaintiff and was thereby foreclosed from questioning performance of the contract in accordance with its terms, or that the city waived the provision of the contract that there should be no claim for extras unless ordered in writing by the engineer. Nor do we think there is merit in plaintiff's claim that since cement tubing instead of cement blocks was used in repairing the sewer, notwithstanding the right may be otherwise established, the defendants cannot be allowed the cost of such repairs as a set-off to plaintiff's claim on the ground that the method of construction in making the repairs was not that specified in the contract. The undisputed testimony is that the cost of repair would have been much greater with segment block construction than with the use of concrete sewer pipes.

It is not probable that other questions presented on this appeal will arise incident to retrial. The judgment entered in the circuit court is reversed, and a new trial ordered. Costs of this court to plaintiff.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.