DiPONIO *v.* CITY OF GARDEN CITY.

1. CONTRACTS—WRITTEN AGREEMENTS—CONTRARY PAROL AGREE-
MENTS.

 A written contract cannot be changed by parol agreements to
 the contrary.

2. MUNICIPAL CORPORATIONS—SEWER CONTRACTS—ULTRA VIRES.

 Plaintiff's contract with home-rule city to build certain sewer
 extensions was not *ultra vires,* where charter contains no
 limitation on city's right to make contracts or increase its
 debts unless prior thereto appropriations and necessary funds
 and provision for raising funds have been made.

3. SAME—EXECUTED CONTRACTS—AUTHORITY—BENEFITS.

 Where an executed contract is neither *malum in se* nor *malum
 prohibitum,* but can only be avoided because of defects in the
 manner of its execution, the municipal corporation cannot re-
 tain the benefits and deny the authority.

4. SAME—SEWERS—REVENUE BONDS.

 A home-rule city may construct a sewage system without a vote
 of the electors since it is a project of public health and safety
 for which self-liquidating revenue bonds may be issued (Act
 No. 94, Pub. Acts 1933, as amended by Act No. 65, Pub.
 Acts 1935 and Act No. '2, Pub. Acts 1939).

5. SAME—TAXATION—BONDS.

 A home-rule city may levy taxes up to two per cent. on the
 valuation of real and personal property without approval of
 the electors and general obligation bonds by a vote of three-
 fifths of the electors (1 Comp. Laws 1929, § 2230; § 2241,
 as amended by Act No. 60, Pub. Acts 1941).

6. SAME—JUDGMENT BONDS.

 Any city may issue judgment bonds to raise money it owes
 under an unpaid judgment against it (3 Comp. Laws 1929,
 §§ 14706, 14707).

7. SAME—SEWER EXTENSIONS—JUDGMENT.

> Contractor under written contract with home-rule city for con-
> struction of sewer extensions who properly and satisfactorily
> performed his contract and extras therein provided for *held*,
> entitled to judgment based on engineers' estimates or releases
> and interest thereon, where, although all work was. completed
> in less than a year during war time, no payment has been
> made in period of nearly four years subsequent to completion
> of work.

Appeal from Wayne; Marschner (Adolph F.), J.
Submitted January 13, 1948.   (Docket No. 54, Cal-
endar No: 43,930.)   Decided February 16, 1948.

Assumpsit by Angelo DiPonio against City of
Garden City on sewer construction contract.   Judg-
ment for plaintiff.   Defendant appeals.   Affirmed.

*Fischer, Brown, Sprague, Franklin & Ford,* for
plaintiff.

*Jesse W. Bollinger (Miller, Canfield, Paddock &
Stone,* of counsel), for defendant.

BUTZEL, J.   Angelo DiPonio, plaintiff, as the low-
est of several bidders, was awarded a contract to
build certain extensions of the sewer system of the
city of Garden City, defendant.   The sewers pre-
viously built have been financed through an issue of
$400,000 of revenue bonds, the interest and principal
being payable from the rates collected from the users
of the water and sewer facilities.   Shortly after the
previous sewers had been built and the issue of the
revenue bonds, plaintiff and defendant executed a
written contract dated July 8, 1943, in accordance
with plaintiff's bid.   It provided for an extension
of the sewer system under an alley and certain
streets   designated.   Plaintiff   was   to   be   paid

$33,733.89 more or less for the construction, the amount to be determined in accordance with unit prices contained in plaintiff's proposal. General as well as technical specifications and plans, which had been prepared by the engineers, were specifically designated in the contract and were to be deemed a part thereof. A firm of Detroit engineers referred to in the contract as the "engineer" had prepared the plans and specifications for the city. They were given the power and duty to superintend the carrying out of the contract and determine the sufficiency of the construction and material, and they were given the decisive word in regard to the proper performance of the contract by plaintiff. The specifications also provided that the contractor was to perform such extra and unusual work as the engineer might in writing specifically direct. The city also had the right to make alterations in the quantity of work. The contract further provided that in order to enable the contractor to prosecute the work advantageously, the engineer should make and issue to the contractor semimonthly estimates in writing of the approximate value of the materials and work furnished by the contractor and accepted by the engineer. The city agreed to pay 85 per cent. of each estimate less any amount previously paid. The remaining 15 per cent. was to be paid to the contractor upon certain conditions that plaintiff fulfilled.

A very large amount of extra work was ordered and done by plaintiff on the order of the engineer. From time to time the engineer issued estimates which on February 28, 1944, amounted to $61,510.23. No part of this amount has been paid to plaintiff. After waiting a long time he brought the instant suit against defendant to recover this amount and interest. The case was tried without a jury and the

judge awarded plaintiff a judgment of $70,641.36. Defendant appeals.

There can be no question as to the proper and satisfactory fulfillment of the contract by plaintiff, or that the amount claimed is due him with interest if the city is liable. The city has accepted all the benefits of plaintiff's work, and in May, 1947, at the time of the trial, 224 connections had been made by the city for owners of property who had availed themselves of the use of the new sewers built by plaintiff under the contract. The city first made a flat charge of $50 and later a $60 charge for each connection with such new sewers, but furnished the labor and materials, the cost of which the record does not show. However, the city has been collecting rates from 224 property owners and the moneys thus received have been turned over to the general operating account of the city's water and sewer department, which was financed at least in part by the $400,000 revenue bond issue. According to the record of the auditor, the estimated net income from the owners of improved property, which had connections with sewers built by the contractor, amounted to $39.75 during the first few months after the sewers were built. The following year it amounted to $740.43, and the third year ending March 31, 1946, it amounted to $2,811.20. The city is thus collecting rates from sewers built by plaintiff, who has not received a single penny for his work and materials.

The defendant raises some question as to the contract for the extras. The engineer, however, testified that certain additions were authorized by the common council after the contract was entered into. He had issued the directions to plaintiff. The judge stated in his opinion that the work was properly done and, as stated by the city engineer, in accord-

ance with the plans and specifications and in conformity with the contract. The judge further found that there was no claim that the work was not authorized or requested by the defendant. There is no assignment of error on the finding in defendant's reasons and grounds of appeal. In fact, the city has recognized that the amount is due plaintiff if it is legally obligated to pay at the present time or in any other manner than from the proceeds from the sale of revenue bonds, when and if issued and sold.

The city strenuously contends that the entire contract is void, *ultra vires,* and unenforceable. It claims it had no power to make such a contract unless payment to plaintiff be limited to the proceeds of additional revenue bonds when and if ever issued and sold. The city concedes that there is some moral but not any legal liability on its part, and it would be willing to pay plaintiff if permitted to legally issue additional revenue bonds and be able to sell them. It shows that it was refused such permission. While it made an attempt to have additional bonds in the amount of $75,000 issued long after this case was begun, it shows that this permission has been refused.

Defendant further claims that there was a distinct verbal understanding on the part of all parties that plaintiff was only to be paid from a Federal grant which it expected to receive or from the proceeds of revenue bonds when issued and sold. It insists that plaintiff knew of these conditions and distinctly understood that payment would have to be made either from the Federal grant or proceeds from revenue bonds. Time was all important when the contract was entered into. Plaintiff had a priority on materials, and sewer connections were necessary to make it possible to meet the specifications required to finance the building of homes for workers in war in-

dustries. The Federal grant was not forthcoming, nor were additional revenue bonds issued. It is claimed that there are not sufficient revenues from properties with connections with the new sewers so as to justify the validation of additional bonds in the amount of $75,000.

Plaintiff, on the other hand, absolutely denies that payment to him was contingent. Nothing was stated in the contract to that effect. The terms were cash as hereinbefore stated. It is elementary that a written contract cannot be changed by parol agreements to the contrary. Plaintiff received the final estimate from the engineer showing the value of the work completed on February 28, 1944, or slightly less than eight months after the contract was entered into.

On February 14, 1944, plaintiff wrote to the mayor of defendant city stating that at the time of the making of the contract the financial position of the city was outlined, and attention was called to the need for installing the sewers so as to maintain the validity of the contractor's priorities and permit the construction without delay. Plaintiff further stated that he was assured that the sale of revenue bonds to pay him would be consummated within 30 days after signing the contract. In reliance thereon he signed the contract and proceeded with the work. He, therefore, asked the city to pay him a fair rate of interest on the amount due him. On February 28, 1944, evidently in reply to the letter, the common council of the city unanimously passed a resolution referring to plaintiff and others, stating:

"Whereas said contractors and engineers have proceeded with construction and engineering without payments on said contracts for such services, with the understanding that the city of Garden City was making an application to Federal Works Agency

for governmental grant for certain further construction work necessary to the city and found it advantageous to delay the necessary proceedings for the issuance of bonds to pay for the city's share of the construction of projects already completed as aforesaid and to be completed under further projects above mentioned, for the reason that it was not readily ascertainable by the city as to just the amount of bonds to issue, and

"Whereas the above mentioned contractors and engineers have kindly agreed to proceed with the construction and engineering as aforesaid in order that the improvements be laid for war housing needed in the emergency, and

"Whereas if the city of Garden City had made payments on contracts for such construction and engineering when the work had been completed, it would have issued bonds upon which it would now and would have been paying interest.

"Now therefore be it further resolved that the city pay to the above mentioned contractors and engineers interest upon all sums due them for construction and engineering on said project work from the date sums of money are due under the said contracts, according to engineers' releases and certificates, until paid, such interest to be in the same amount and at the rate provided for in the income revenue bonds which the city issues and sells for the purpose of paying for such project construction and other proper sums incidental thereto."

No interest was ever paid. An unsuccessful effort was made by defendant to raise the money due plaintiff before and after this suit was begun.

Defendant's main contention is that it is a home-rule city (Act No. 279, Pub. Acts 1909, as amended), and that under clause (g) of section 3 of the act (1 Comp. Laws 1929, § 2230 [Stat. Ann. § 5.2073]) and clause (a) of section 5 of the act (1 Comp. Laws 1929, § 2241, as amended by Act No. 60, Pub. Acts

1941 [Comp. Laws Supp. 1945, § 2241, Stat. Ann. 1947 Cum. Supp. § 5.2084]), its rate of taxation cannot exceed 2 per cent. of the assessed valuation of its real and personal property. It was shown that the budget for the year 1943 was prepared in the spring of that year, was adopted by the common council on July 1, 1943, at a special session called for that purpose. This budget adopted provided for the raising of taxes in the amount of $64,783.92, or $18.20 per thousand on the assessed valuation of $3,603,266. The budget, containing no item for sewer construction, was prepared long before and adopted a week prior to the date of the contract with plaintiff. In 1944, the assessed valuation had increased to $4,334,495. Two per cent. of this amount would have netted the city $20,000 over and above the budget requirements had they remained the same as during the previous year.

The contract was not *ultra vires*. In *American LaFrance & Foamite Industries, Inc.,* v. *Village of Clifford,* 267 Mich. 326, we said, quoting from *Webb* v. *Township of Wakefield,* 239 Mich. 521:

" 'The good faith of government should never be less sacred than that of individuals.' Where the executed contract is neither *malum in se* nor *malum prohibitum,* but can only be avoided because of defects in the manner of its execution, the corporation cannot retain the benefits and deny the authority."

Defendant's main difficulty is that it is not shown in any way how the city was precluded from entering into a contract to build sewer extensions although under the home-rule act the city could not increase the rate of taxation for the expenses of running the city so as to exceed 2 per cent. of the real and personal property valuation. Defendant's charter is peculiar in that it contains no limitations on the

city's right to make contracts or increase its debts unless prior thereto appropriations and necessary funds and provision for raising these funds have been made. Under section 17 of chapter 30 of the fourth-class city act (1 Comp. Laws 1929, § 2151 [Stat. Ann. § 5.1946]) and under many charters of other cities, there will be found provisions prohibiting the entering into contracts prior to a tax or assessment having been levied to pay the cost. Cases cited by defendant referring to such cities are not in point. Defendant undoubtedly did rely upon a Federal grant, but in lieu thereof it cannot ask plaintiff to forfeit payment. Plaintiff should not be penalized because of defendant's delay and inaction, and final inability to issue and sell additional revenue bonds. It is possible that it could have secured the validation of a lesser amount of revenue bonds for the time being and applied the proceeds from their sale on plaintiff's indebtedness and then paid him the balance from other sources. It is very possible that defendant may be able to issue and sell more revenue bonds before many years have elapsed, if it continues to enjoy the growth it has had in the past. We, however, shall not indulge in speculation.

Defendant did have a right to enter into the contract. The record does not satisfy us that defendant was without funds. On October 9, 1943, shortly after the contract was entered into the city clerk wrote plaintiff stating that the city was not at that time in a position to use moneys on hand to a very great extent for the expanding program of sewer construction, and that the city was willing to enter into such construction for a $150,000 assured program. It was suggested that plaintiff could proceed to the extent of $25,000 of construction to be outlined by the engineers and by the time the construction was under way the city would have decided which

way to move and would be in a position to carry on the complete prosecution of the original project and the sale of $150,000 of bonds and limit the project to that amount. It further stated that plaintiff was given authority to proceed with the extension of such work as was designated by the engineer and he should indicate his willingness by letter. Evidently plaintiff did not write the letter but he proceeded in accordance with the work.

The city is not only retaining the benefit of the contract but, also, collecting a revenue therefrom. In *Coit* v. *City of Grand Rapids,* 115 Mich. 493, we held:

"A municipality cannot retain the benefits of a contract which has been fully performed by the other party, and which is neither *malum prohibitum* nor *malum in se,* and at the same time deny the validity of the contract because of defects in the manner of its execution (syllabus)."

Also, see *Carey* v. *City of East Saginaw,* 79 Mich. 73; *Spier* v. *City of Kalamazoo,* 138 Mich. 652; *Central Bitulithic Paving Co.* v. *City of Mt. Clemens,* 143 Mich. 259; *Peterson* v. *City of Ionia,* 152 Mich. 678; *City of Saginaw* v. *Consumers' Power Co.,* 213 Mich. 460; *Commercial State Bank of Shepherd* v. *School District No. 3 of Coe Township, Isabella County,* 225 Mich. 656; *Webb* v. *Township of Wakefield,* 239 Mich. 521; *L. W. Kinnear, Inc.,* v. *City of Lincoln Park,* 260 Mich. 250. The question of a city's right to enter into a sewer contract was raised in *Oakland County Drain Commissioner* v. *City of Royal Oak,* 306 Mich. 124, wherein we held that there was no constitutional or statutory limitation upon political subdivisions obligating themselves to pay for future sewage disposal services as rendered.

In *Holland* v. *Clerk of Garden City*, 299 Mich. 465, we held that the council of the city of Garden City (the defendant in the instant case) had adopted ordinance 46 pursuant to the provisions of Act No. 94, Pub. Acts 1933, as amended by Act No. 66, Pub. Acts 1935 and Act No. 2, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 2486-24 *et seq.*, Stat. Ann. 1940 Cum. Supp. § 5.2731 *et seq.*), and had a right to make an extension of a water supply system without a vote of the electors; that to construct a sewage system is a project of public health and safety within the sphere of activity contemplated by statute authorizing the issuance of self-liquidating revenue bonds by a city without submitting the proposition for the approval of the city's electors.

A very similar question was raised in *Morley Bros.* v. *Township of Carrollton*, 305 Mich. 285, wherein in an opinion written by Mr. Justice NORTH, we stated:

"Section 1 of Act No. 94, Pub. Acts 1933, as amended by Act No. 66, Pub. Acts 1935 (Stat. Ann. § 5.2731), authorizes townships and other municipalities to acquire or construct various public improvements including water supply systems. This act has been held constitutional. * * *

"The title of the act is so worded as to give first to the municipalities, including townships, authority to acquire or construct certain improvements (including water supply systems) and then, as an aid to carrying out such projects, the power to issue self-liquidating bonds. We can find nothing in the act which provides that only the money raised by such bond issue may be used to pay for such construction. It would not even be necessary for the township to float such a bond issue if the township had funds on hand or other sources of income available with which to pay for the construction of the project.'

"With authority being given to acquire or construct a public project as defined in the act, it must necessarily follow that authority to pay for the project is at the same time granted. The issuance of self-liquidating bonds is authorized as one means of so making payment, but it is not made an exclusive means of obtaining funds for such payment. * * *

"We view the plaintiff in this case as a creditor of the township and we find nothing in the cited statute which applies to creditors. The restrictions and reservations in the act apply only to holders of the self-liquidating bonds. Act No. 94 permitted the construction and therefore the contract was not *ultra vires*. Appellee's contention to the contrary is not tenable."

Defendant attempts to distinguish *Morley Bros.* v. *Township of Carrollton, supra,* from the instant case on the ground that the township had no statutory tax limitation of 2 per cent. as provided for a home-rule city. We are not impressed with this claim. We are simply deciding whether the contract was *ultra vires* or not. The question is not whether defendant can levy a tax in excess of 2 per cent. of its real and personal property. The trial of the case was postponed in order to give the city an opportunity to raise the money by the issuance of revenue bonds. It was not until the latter part of 1947 when the judge entered the judgment for plaintiff. From the brief filed in this Court by the city just prior to the beginning of the present term of court, the city indicates that it disclaims any obligation to pay plaintiff unless possibly when and if it issues and sells revenue bonds. Without making any payments or doing any other act to toll the statute it would not be long before possibly the city might claim that plaintiff's claim was outlawed.

It is suggested that there are many ways in which the city could help itself. A considerable sum can be collected by defendant over and above its current expenses by levying a full 2 per cent. on the valuation of the real and personal property.* We are not satisfied from the record that a good part of plaintiff's claim cannot be paid through the issuance of and sale of additional revenue bonds in a lesser amount than that heretofore asked by defendant. General obligation bonds can be issued by the city by a vote of three-fifths of the electors. The electors undoubtedly have too high a moral sense to permit the city to repudiate its debts and they also have too high a civic pride to permit a judgment against the city to remain unpaid. Further, it is suggested that a special assessment district can be established and special assessments levied very simply without the vote of the people. The city may issue judgment bonds to raise the money it owes under Act No. 86, Pub. Acts 1911 (3 Comp. Laws 1929, §§ 14706, 14707, Stat. Ann. §§ 27.1681, 27.1682). Other ways are also suggested. We pass on none of them. We do hold that in view of all the circumstances of this case, the contract was not *ultra vires,* and plaintiff is entitled to a judgment.

The judgment is affirmed, with costs to plaintiff.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.

* See 1 Comp. Laws 1929, § 2230 (Stat. Ann. § 5.2073); § 2241, as amended by Act No. 60, Pub. Acts 1941 (Comp. Laws Supp. 1945, § 2241, Stat. Ann. 1947 Cum. Supp. § 5.2084).—REPORTER.