## FARMINGTON TP. et al. v. WARREN-VILLE STATE BANK et al.

### No. 11096.

United States Court of Appeals
Sixth Circuit.

Nov. 28, 1950.

Arthur E. Moore, Royal Oak, Mich. (Arthur E. Moore, Royal Oak, Mich., on the brief), for appellants.

John C. Spaulding, Detroit, Mich. (Joseph Marvaso, Miller, Canfield, Paddock & Stone, Detroit, Mich., on the brief), for appellees.

Before SIMONS, MARTIN, and MILLER, Circuit Judges.

SIMONS, Circuit Judge.

This appeal, in its narrowest aspect, involves the power of a receiver appointed, under the terms of the Michigan Revenue Bond Act of 1933, for a self-liquidating water system, to charge the township for the rental of fire hydrants installed in the populated section of the township. The

Court authorized the receiver to establish an interim minimum rate for each hydrant, and the township and its Board appeal.

The Revenue Bond Act, as amended, Michigan Statutes Annotated, 5.2731 et seq., Comp.Laws 1948, § 141.101 et seq., authorizes any public corporation to borrow money for public improvements provided that the principal and interest upon such bonds as may be issued shall be payable solely from the net revenues derived from the improvement, shall not be a general obligation of the borrower, and the authorizing ordinance shall establish a statutory lien upon the net revenues of the improvement in favor of the bondholders. Section 10 of the Act provides that if there be any default in the payment of principal or interest any Court having jurisdiction may appoint a receiver to administer and operate the improvement under the direction of the Court, and by and with the approval of the Court, fix and charge rates and collect revenues sufficient to provide for the payment of the bonds outstanding and to apply the income and revenues of the improvement to their payment in accordance with such orders as the Court shall make. Section 18 provides that no free service shall be furnished by any such public improvement to any person, firm, or corporation, public or private, or to any public agency or instrumentality, and that the reasonable cost and value of any service rendered to any such borrower by such public improvement shall be charged against the borrower and shall be paid for as the service accrues from the borrower's current funds or from the proceeds of taxes which such borrower, within constitutional limitations, is authorized and required to levy. Section 21 provides that rates shall be fixed sufficient to provide for payment of the expenses of administration and operation, for maintenance of the improvement in good repair and working order and for payment of the interest and principal of all bonds payable therefrom, as and when same become due and payable, and that such rates shall be fixed and revised from time to time by the governing body of the borrower so as to produce this amount. The borrower shall covenant and agree in the ordinance authorizing the issue of such bonds to maintain at all times rates for services furnished by the improvement as shall be sufficient to provide for the foregoing purposes.

In pursuance of the authority granted by the Act, the Township of Farmington, on October 1, 1940, issued its Section 36 Water Supply System Revenue Bonds, in the amount of $110,000, for improving, enlarging, and extending an existing, but inadequate, water system. As of November 26, 1947, there was default in the retirement of eight bonds, in the total amount of $8,000, and default in the payment of interest represented by coupons on the whole issue, in the amount of $9,900. Under Section 9 of the Act, which provides that not less than 20 per cent of the bondholders of the issue then outstanding may either at law or in equity protect and enforce their statutory lien and compel performance of all duties of the officials of the borrower, including the fixing of rates and collection of revenues, a sufficient number of the holders of the outstanding bonds brought the present suit and asked for the appointment of a receiver to administer the water system in conformity with the provisions of Section 10 of the Act. The Court, after making appropriate findings of fact, including a finding that rates had not been revised for eight years, and announcing conclusions of law, entered a decree, directing the Township, the Township Board, and the officers thereof to charge and collect water rates sufficient to pay the defaulted bonds and accrued interest, in default of which for sixty days a receiver would be appointed to operate the water supply system in pursuance to the authority of Section 10 of the Act. From this decree entered September 30, 1948, there was no appeal.

Although no order for the appointment of a receiver appears in the record, it seems to be conceded that default occurred and that an order was entered on June 23, 1949, appointing Matthew Perry receiver; and that he qualified as such and assumed active control and operation of the system subject to orders and instructions of the Court on July 1, 1949. On September 28,

1949, he advised the Court that he had examined the books and records of the system pertaining to the schedule of rates for water and service and method of collecting the rates; had ascertained that the system included 44 fire hydrants for public fire protection; that no charge had ever been made to the township or anyone else for the use of the hydrants and that he believed that Section 18 required that a reasonable charge be made; that it was his duty to fix and collect such charge; and that upon inquiry as to rates charged to and paid by other municipalities for the use of hydrants the commonly used minimum rate for such services is $25 per year for each hydrant. He therefore recommended that such rate be established until the further order of the Court. Upon this petition the order authorizing the receiver to establish such rate was entered and is here assailed.

The bases for the present challenge are that there is no legal authority to pay hydrant rental out of the general funds of the township without an electoral vote or petition; that the rates fixed are illegal, because on the number of hydrants rather than upon the reasonable cost and value of the water used; that the power of the Court is so limited that a township cannot be compelled to contract, accept, or pay for water against its will; that if the statute is construed to authorize a mandatory order for payment of hydrant rental it is unconstitutional, because it violates Section 1 of Article 4 of the Constitution of Michigan, and Section 1 of Article 1, Section 1 of Article 2, and Section 1 of Article 3 of the Constitution of the United States, because it grants legislative and administrative powers to the Judiciary.

■■ Act 94 has been held constitutional in numerous cases by the Michigan Supreme Court as against challenges identical with, or analogous to, those here asserted. In Holland v. Clerk of Garden City, 299 Mich. 465, 300 N.W. 777, the Court held that a city had a right to make an extension of the water supply system without a vote of the electors and that to construct its sewage system is a project in the interest of public health and safety and so within the sphere of activity contemplated by the statute. See also Young v. City of Ann Arbor, 267 Mich. 241, 255 N.W. 579; Morley Bros. v. Carrollton Township, 305 Mich. 285, 9 N.W.2d 543; Di Ponio v. City of Garden City, 320 Mich. 230, 30 N.W.2d 849. We perceive no infirmity in the Act as construed below that makes it violative of any section of the Constitution of the United States in respect to the granting of legislative and administrative powers to the judiciary. When a receiver is appointed to administer the affairs of a municipal facility constructed under the terms of the Act, he assumes the functions of the governing body of the municipality in respect to its operation, the collection of its revenues, and the payment of its debts, subject, of course, to supervision of the appointing Court. The operation of a facility such as is here involved is a ministerial and not a governmental function.

The obligation of a township to pay for hydrant rental does not arise out of any general obligation of the township created by the issue of self-liquidating revenue bonds and is not affected by the self-liquidating character of the facility established under the Act. The obligation of a township derives from the establishment of and the services rendered to the township by the fire prevention instrumentalities from which revenues are sought by the receiver, whether those revenues are used for the operation and repair of the system, or the retirement of its obligations.

■■ There is no merit to the contention that the reasonable value to the township of the forty-four fire hydrants is to be measured only by the supply of water that may in the past have passed through, or is likely in the future to pass through, them. They were installed by the Township Board when it created the water system and were maintained by it when it operated that facility. Their purpose could only have been to safe-guard the township community and its private and public property from the danger of fire. Certainly, they are not mere ornaments. To say that no obligation rests upon the township except

one that arises from and is measured by the use of water negates the whole concept of insurance. It would be as logical to say that the reasonable value of police protection is to be measured by the physical activity of guardians of the peace only when they are called upon to make arrests for violation of law. "Stand by" protection against fire is service whether the instrumentalities be animate or inanimate. Compare Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 and Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124. The township is not by the decree compelled to contract, accept, or pay for water against its will. It established the hydrants. Both it and the receiver are precluded by Section 18 from providing free service to anybody, including public corporations and agencies. Fire protection is a service which accrues from day to day to the public that is thereby safe-guarded. It would be impossible to entertain the idea that in the event of fire the receiver before extinguishing it must first negotiate a contract with the township to accept and pay for water used for that purpose.

■ There is nothing unreasonable in the charge made by the receiver and approved by the Court of $25 a year for hydrant rental. It is much less than that paid by many nearby communities. The Court below authorized the rental, but announced no mandate as to the funds out of which it was to be paid. Neither do we. As pointed out in Di Ponio v. City of Garden City, supra, there are undoubtedly various ways in which the township obligation may be met under authority of law. We do not undertake to pass upon them. It is suggested that Article X of Section 23 of the Constitution of Michigan permits townships to share on a per capita basis in the state sales tax without statutory regulation as to the use of such funds which thus become available. If, however, some statutory procedures are required to be initiated by the township authorities, there is persuasiveness in the observation of the Michigan Supreme Court in the Di Ponio case, 320 Mich. at page 242, 30 N.W.2d at page

854, "The electors undoubtedly have too high a moral sense to permit the city to repudiate its debts and they also have too high a civic pride to permit a judgment against the city to remain unpaid."

Act 94 inhibits foreclosure upon the property of any facility created under its authority. The statute, however, provides a remedy for default in the appointment of a receiver. It would be a strange result if a Township Board creating a water system under the authority of the Act, by its neglect of obligation in fixing adequate rates for its operation, or by refusing to pay for a valuable service provided by such system, could destroy the only remedy provided by the Act to the holders of its bonds. Not only would it be strange, but it would deprive all other communities in the State from opportunity to finance water, sewer, and other facilities for the protection of the public health and safety by destroying their borrowing power. Legislative purpose is not so lightly evaded.

The decree is affirmed.