WEBB *v.* TOWNSHIP OF WAKEFIELD.

McNICHOLAS *v.* SAME.

1. MUNICIPAL CORPORATIONS—WHERE BENEFITS RETAINED REASON-
ABLE COMPENSATION RECOVERABLE ALTHOUGH CONTRACT INVALID.

> In an action on a contract which is not *ultra vires,* a
> municipal corporation may not shield itself behind a de-
> fense based on the manner in which the contract was
> made, and retain the benefits of the contract, without
> tendering at least a reasonable compensation for the bene-
> fits received.

2. HIGHWAYS AND STREETS—TOWNSHIP MAY CONSTRUCT AND MAIN-
TAIN HIGHWAYS AND RAISE AND EXPEND MONEY THEREFOR.

> It is within the corporate powers of a township to de-
> velop, construct, maintain, and repair its highways, to
> raise taxes therefor, and expend the money in material,
> equipment, and work appropriate to that end.

3. SAME—IRREGULARITY DOES NOT NECESSARILY MAKE CONTRACT
ULTRA VIRES.

> It does not necessarily follow that contracts of a munici-
> pal corporation for road purposes were necessarily *ultra
> vires* as to the corporation itself because its agents or
> officers did not observe prescribed statutory procedure and
> limitations imposed upon them, especially where the bene-
> fits thereof were received, retained, and enjoyed by the
> corporation as such, and not by its officers.

4. SAME—TOWNSHIP LIABLE FOR REASONABLE VALUE OF WORK
AND MATERIALS ALTHOUGH CONTRACT INVALID.

> Although contracts with a township for work and
> materials furnished for road purposes are invalid, the party
> furnishing same is entitled to recover the reasonable value
> thereof, where the benefits are retained and enjoyed by the
> township.

Error to Gogebic; Driscoll (George O.), J.    Sub-

[1]Municipal Corporations, 28 Cyc. p. 674; [2]Highways, 29 C. J.
§ 309; Towns, 38 Cyc. pp. 611 (Anno), 653; [3]Municipal Corpora-
tions, 28 Cyc. p. 670; [4]Id., 28 Cyc. p. 685; Towns, 38 Cyc. p. 638;
10 R. C. L. 709; 2 R. C. L. Supp. 1051; 5 R. C. L. Supp. 565;
6 R. C. L. Supp. 620.

mitted April 9, 1926.     (Docket Nos. 59, 60.)     Decided July 29, 1927.

Separate actions of assumpsit by Gurn S. Webb and John E. McNicholas against the township of Wakefield for goods sold and delivered and services rendered. Judgments for plaintiffs.     Defendant brings error. Affirmed.

*Edward W. Massie,* for appellant.

*William S. Baird,* for appellees.

STEERE, J.    The above entitled cases arise out of alleged delinquencies of the same officers in the same township, involve the same controlling questions of law, as we view it, and will be considered together. In each case the declaration counted upon an alleged contract, upon township orders for the amount claimed under it, and also upon the common counts in assumpsit.    In each case defendant pleaded the general issue with various special notices based chiefly on failure of the township officers to observe statutory provisions governing their action and limiting their authority in such matters, with a claim of set-off for amounts paid plaintiffs on their alleged invalid contracts, or on orders given in payment thereon.    Both cases relate to highway matters.    In each the court held the claimed contracts and orders invalid but permitted recovery on *quantum meruit* under the common counts.

It appears undisputed that for the year 1921 there was assessed, spread upon the tax roll and levied on the taxable property in defendant township the sum of $13,000 for highway improvements and $13,000 for road repairs.    The assessed valuation of the township for that year was $2,751,133.

The *Webb Case* involves the sale of two snow plows purchased by officials of defendant township in 1921

for winter use upon its highways.    Plaintiff was a manufacturers' broker or dealer located at Marquette, Michigan, and in September, 1921, received an inquiry from William Weston, then supervisor of defendant, concerning the purchase of two snow plows for the township preparatory to their use on its roads during the winter, and asking him to submit bids on two special township plows to be equipped so that either horses or tractors could be used with them.    After getting prices, from manufacturers plaintiff quoted a price of $700 each for two Brazel special township snow plows capable of a spread to plow the road 14 feet wide.    He thereafter received an order from the supervisor for two snow plows of that type which under his directions were shipped directly to the township from the factory at Cheboygan, Michigan. Some repair parts were also ordered by defendant's officials and furnished, amounting to $100, making the total indebtedness for the two snow plows and parts furnished $1,500.    Following this the township board audited and allowed the account, and sent plaintiff a township time warrant or order for that amount. It used the plows thereafter for three succeeding winters, for a time with horses and afterwards with tractors.    At time of the trial the township yet had them; defendant's then highway commissioner said he was in favor of buying them when it was talked over; that they were used when it was necessary during the winters of 1922, 1923, and 1924; they worked all right, were good snow plows, did the work they were supposed to and there was no fault found with them.    When the $1,500 warrant fell due defendant's check for $750 was sent plaintiff with a time order for the balance.    This not being paid when due and payment pressed, plaintiff finally obtained from defendant an order dated June 8, 1922, for the amount of $802.46, payable on January 3, 1923, to draw in-

terest at 7 per cent.    The order was not honored when due and after demand this action was brought to recover the balance due for those snow plows with interest.    In this case only the question of actual or market value of the snow plows and parts when furnished was submitted to the jury.    After instructing the jury that the township orders given in payment were invalid and could not be considered as a foundation for recovery, the court said in part:

"But notwithstanding this, the plaintiff, under the undisputed facts in this case, is entitled to recover the difference, if any, between the amount he has received for these snow plows and the reasonable value of the snow plows at the time they were sold or delivered by him to the defendant, and also for the reasonable value of any extras which may have been furnished by him to the defendant."

A verdict was rendered and judgment entered in plaintiff's favor for $752.91.

The *McNicholas Case* was brought to recover for the service of two three-ton four-wheel-drive trucks hired by defendant from plaintiff in 1921, through its supervisor, to haul gravel on a certain highway job at an agreed price of $25 per day for each truck, plaintiff to pay the drivers and all expenses for repairs, while the township furnished the gasoline.    The trucks were so employed for a total of 51 days, one for 35 days and the other for 16.    Plaintiff's bill for such service, amounting to $1,275, was submitted to and audited by the township board, allowed and a township order given plaintiff for that amount.    Later this order was paid in part and a new order given for $635.66, which was never paid, and this action was brought to recover the balance due with interest.    Touching the defense of set-off plaintiff admitted that he was authorized at one time to use three trailer dump wagons of defendant and testified he only used them one day, for which he con-

ceded $2 each per day could be deducted from his claim.     A witness of defendant who had been its township engineer testified he was familiar with the three dump wagons and that "Two dollars each per day would be a fair rental for those wagons."     No other witnesses testified as to the value of their use. The court instructed the jury upon that item of set-off defendant was entitled to the rental value of those trailers at not to exceed $2 per day for each, and, referring to some conflicting testimony as to the time of plaintiff's possession of them and implied use, said in conclusion:

"Now, it will be for you to say from the evidence how much the defendant is entitled to on account of the rental or use of such trailers or wagons under the instructions I have given you."

Though questioned by defendant, we discover no error on that minor issue.

Upon the basic major issue submitted to the jury, after instructing there could be no recovery upon the claimed contract or township orders, the court charged in part as follows:

"But if the plaintiff's trucks and drivers actually worked for the defendant and the defendant accepted and received the benefit of such work, then the plaintiff is entitled to recover the reasonable value of the use of the trucks, whatever such reasonable value may be."

The jury rendered a verdict in plaintiff's favor for $717.39, and judgment followed.

Under the rulings of the trial court in these two cases the many more or less technical questions raised as to neglect of the township officers to record their proceedings or to observe statutory requirements in those transactions become academic and call for no detailed consideration.     In both cases the controlling question is plaintiff's right to recover on a *quantum meruit* for value of actual benefits to defendant arising out of

those transactions.    It may be conceded that question has not always been free from doubt.    On re-affirmance on rehearing of the decision in *Argenti* v. *City of San Francisco,* 16 Cal. 255, 283, holding the city liable on a *quantum meruit* for accepted benefits, Chief Justice Field aptly said:

"Indeed, upon the general subject of the extent of the liability of a municipal corporation, the authorities are a tangled web of contradictions, and it is difficult to assert any proposition with respect to the same for which adjudications on both sides may not be cited."

It was there held that an executory contract of a municipal corporation made without authority may not be enforced; but after it has been executed and the corporation has received the benefit of it the law imposes an estoppel in the nature of an implied contract and will not allow the validity of the claimed void contract to be questioned.    While corporations cannot generally go beyond their charter power, yet in the irregular exercise of its powers a corporation cannot take greater advantage of its own errors than can a private person.    This case is cited and quoted from with approval in *Central Bitulithic Paving Co.* v. *City of Mt. Clemens,* 143 Mich. 259.    In 2 Dillon on Municipal Corporations (5th Ed.), 1184, it is said:

"The present state of the authorities clearly justifies the opinion of Chancellor Kent, that corporations may be bound by *implied contracts* within the scope of their powers, to be deduced by inference from authorized corporate acts, without either a vote, or deed, or writing."

The generally accepted rule applicable to the situation presented in these cases is thus concisely stated in 10 R. C. L. p. 709:

"But if the subject-matter of the contract is not *ultra vires,* illegal, or *malum prohibitum,* and the facts

are such, as against the corporation, as would estop an individual from setting up as a defense the unconstitutionality of the statute, the municipal corporation also will be estopped.   In an action on a contract which is not *ultra vires* a city cannot shield itself behind a defense based on the manner in which the contract was made, and retain the benefits of the contract, without tendering at least a reasonable compensation for the benefits received."

Like views have been expressed by this court under varying circumstances.

"If, on the other hand, the contract be one which it was within the power of the corporation to make, the fact that informalities may be found in the proceedings does not prevent recovery, in a case where, as in the present, the municipal corporation has had the benefit of performance by the other contracting party, and has from time to time ratified the contract, and audited the bills presented" (citing cases).   *East Jordan Lumber Company* v. *Village of East Jordan,* 100 Mich. 201.

"The defense of *ultra vires* in this case is most inequitable and unjust.   It should not be sustained unless the rigid rules of law require it.   'The good faith of government should never be held less sacred than that of individuals.'   Where the executed contract is neither *malum in se* nor *malum prohibitum,* but can only be avoided because of defects in the manner of its execution, the corporation cannot retain the benefits and deny its authority."   *Coit* v. *City of Grand Rapids,* 115 Mich. 493.

The *Coit Case* has been cited as controlling in *Spier* v. *City of Kalamazoo,* 138 Mich. 652; *Peterson* v. *City of Ionia,* 152 Mich. 678; and *Commercial State Bank of Shepherd* v. *School District,* 225 Mich. 656.   In the last case it is said:

"This court has held as have other courts that where the power exists in a municipal corporation to bind itself, where the contract is *intra vires,* it will be bound even though it may have proceeded irregularly

and in disregard of directory provisions as to the exercise of its power."

Counsel for defendant cites as controlling here *Mackey* v. *Township of Columbus,* 71 Mich. 227, and contends that the doctrine of *ultra vires* is applicable. We do not so construe that case nor find it beyond the power of this municipal corporation to make such contracts as those involved here.    Nothing could be more clearly within the corporate powers of a township than the right to develop, construct, maintain, and repair its highways, to raise taxes therefor and expend the money in material, equipment, and work appropriate to that end.    For that year this township legally raised, so far as shown, $26,000 for that purpose.

As we understand defendant's contention, it is that because the township's agents or officers did not observe prescribed statutory procedure and limitations imposed upon them, the contracts or expenditures for road purposes involved here were *ultra vires* as to the corporation itself.    That does not necessarily follow. The benefits of these alleged illegal proceedings were received, retained, and enjoyed by the township as such, not by its officers.

While the *Mackey Case* contains general statements which perhaps suggest that the contract was not within the scope or the powers of the corporation, that case is clearly distinguishable from this in the particular that the quality of work and materials done and furnished by Mackey in constructing the bridge illegally contracted for was measured by the low price specified in his contract rather than the specifications it contained, and the bridge was never accepted by the township authorities.    It "remained unused and the access to it was not made available, until about midwinter, when the whole structure was swept out

during a freshet." No claim of compensation for receipt of benefits was involved there.

In the instant cases, so far as the records show, ample funds had been provided by taxation to meet these claims, not exceeding the limit authorized by statute. No question of incurring indebtedness beyond appropriations is involved. Neither is there any question of bad faith, dishonesty, or fraud in the transactions, of which plaintiffs might have had knowledge. In both cases the services, equipment, and material supplied defendant were appropriate to the purposes for which they were purchased and clearly within legitimate needs of a township for development, use, and maintenance of its highways. It accepted, used, retained, had the benefit of and partly paid for them without complaint or protest, until pressed by litigation to pay the balance.

Contracts for such service and material were not *ultra vires* as to the defendant municipal corporation which retained and enjoyed the benefits without protest. Under the authorities cited, and as a matter of justice, good faith, and public policy, this municipal corporation was obligated to pay reasonable compensation therefor, as would be a private person.

The judgments will stand affirmed.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.