CAMPBELL v CITY OF TROY

OPINION OF THE COURT

1. CONTRACTS—IMPLIED CONTRACTS—EXPRESS CONTRACTS.

A contract will not be implied when there is an express contract covering the same subject matter at the same time.

2. CONTRACTS—IMPLIED CONTRACTS—EXPRESS CONTRACTS—OVERTIME PAY.

A contract will not be implied to entitle an employee to overtime pay where an employment contract between the parties governs the payment of overtime.

3. MUNICIPAL CORPORATIONS—CITY EMPLOYEES—COMPENSATION—OVERTIME PAY—COMPENSATORY TIME.

A city employee does not have a vested right to be paid for unused compensatory time accumulated by overtime work upon retirement where city regulations do not provide for payment of money for unused hours and where the regulations indicate that taking compensatory time off is not a matter of right.

4. ESTOPPEL—MUNICIPAL CORPORATIONS—CITY EMPLOYEES—OVERTIME—COMPENSATION

The doctrine of estoppel is not applicable to preclude denial by a city of a duty to pay an employee for unused compensatory time, although the city had accumulated the employee's compensatory time over the years, had given him notice of the accumulated time annually, and had allowed him a portion of the time as time off during his employment, since the city had not induced the employee to believe that he would be paid for unused compensatory time upon retirement.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 17 Am Jur 2d, Contracts § 3.

[3, 5] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 259, 519.

[4, 5] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 526.

5. MUNICIPAL CORPORATIONS—IMPLIED CONTRACTS—OVERTIME—COM-
PENSATION.

*Plaintiff city employee, upon retirement, is entitled to be paid
money to liquidate accumulated compensatory time off credited
to him in lieu of payment for overtime and unused as time off
before his mandatory retirement where the compensatory time
off could only be used with the concurrence of the city man-
ager, who sometimes refused, where some other city employees
were compensated in money for accumulated compensatory
time over 80 hours when a limit of 80 hours was placed on the
amount of compensatory time that could be accumulated after
plaintiff had accrued much more, and where plaintiff was
compensated in money for 80 hours of accumulated compensa-
tory time; the city's acceptance of plaintiff's overtime services
established an implied contractual obligation to pay for them.*

Appeal from Oakland, Robert L. Templin, J.
Submitted Division 2 March 8, 1972, at Lansing.
(Docket No. 12206.) Decided August 29, 1972.

Complaint by Carl W. Campbell against the City
of Troy for payment for overtime. Judgment for
defendant. Plaintiff appeals. Affirmed.

*Hutson & Hutson,* for plaintiff.

*Burke & Sawyer,* for defendant.

Before: LESINSKI, C. J., and BRONSON and TAR-
GONSKI,* JJ.

BRONSON, J. Plaintiff, Carl Campbell, was em-
ployed by defendant, City of Troy, as its Superin-
tendent of Public Works from June 15, 1959, until
his mandatory retirement on December 31, 1967.
Plaintiff received an annual salary for his services.
The demands of the job required him to work

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

overtime on numerous occasions. Plaintiff received no payment for this overtime work. Instead he accumulated compensatory time. At his retirement, plaintiff had accumulated 966-1/2 hours of compensatory time. He was paid for 80. He now seeks payment for the remaining 886-1/2 hours for which he received no compensation. The trial judge entered a judgment of no cause of action. We granted plaintiff leave to appeal.

When plaintiff began his employment defendant had in effect an administrative regulation governing payment of overtime. It provided that:

"Salaried employees shall not be entitled to overtime pay but may receive compensatory time-off on the basis of records kept by the department head and approved by the City Manager."

In 1960, defendant adopted a new regulation with regard to overtime. This regulation divided city employees into two groups. Plaintiff was then and at all times until his retirement a member of Group 2.[1] The pertinent regulation provided:

"Group 2 employees shall not receive overtime pay but may receive compensatory time-off on the basis of records kept by the department head and approved by the City Manager. Compensatory time shall be granted for all hours worked in excess of 40 hours per scheduled work week. For approved holidays worked during the scheduled work week, compensatory time shall be granted equal to the number of hours worked."

On January 10, 1966, defendant city adopted Resolution #66-33(A). The applicable paragraph reads as follows:

---

[1] In 1964 the City of Troy adopted a civil service ordinance. Under its terms, plaintiff's position was exempted from civil service protection.

"Employees in the Unclassified Service may not accu-
mulate more than 80 hours of compensatory time. All
compensatory time earned by employees prior to the
adoption of these rules shall remain credited to them.
Such employees, however, with more than 80 hours will
be prevented from accruing additional hours. All com-
pensatory time taken will be deducted from the total
amount of compensatory time credited to the employee
while no overtime worked will be added to the total
until such time as the total compensatory time credited
to the employee is reduced below 80 hours. Compensa-
tory time will be taken off at a straight time ratio and
such time off must be authorized by the City Manager."

Pursuant to these regulations, plaintiff accumu-
lated 1,330-1/4 hours of compensatory time prior
to the adoption of the 1966 resolution. Subsequent
to this he reduced the number of hours to 966-1/2.
He now contends the defendant has a duty to pay
him in monies for any accumulated compensatory
time off he was unable to take prior to his manda-
tory retirement. The basis of his contention is the
existence of an implied contract in law between
himself and the city. He bolsters his argument by
emphasizing the inequities of the situation. Justice
can only be achieved by imposinq a duty on the
city to pay for the benefits it has received as a
result of plaintiff's extra service. *Cascaden v Mag-
ryta,* 247 Mich 267 (1929); *In re Camfield Estate,*
351 Mich 422 (1958); *Detroit v Highland Park,* 326
Mich 78 (1944).

Appealing as plaintiff's argument seems, closer
examination finds it to be legally flawed. A con-
tract will be implied only where no express con-
tract exists. There cannot be an express and im-
plied contract covering the same subject matter at
the same time. *Superior Ambulance Service v
Lincoln Park,* 19 Mich App 655 (1969). Plaintiff
concedes that the regulations adopted by the de-

fendant city constituted an employment contract between the parties which governed the payment of overtime. The cases which plaintiff relies on have no application to the instant situation. All three involve situations where no express contracts were proven. See *Cascaden v Magryta, supra; In re Camfield Estate, supra; Detroit v Highland Park, supra.*

To determine whether plaintiff is entitled to monies in lieu of his unused compensatory time, we must look to the city ordinances and regulations which comprised the employment contract. If these ordinances and regulations do not provide for payment of the monies claimed, then plaintiff's claim must fail. *Olson v Highland Park,* 312 Mich 688 (1945).

The applicable ordinances and regulations clearly indicate that at no time during his employment was plaintiff entitled to overtime pay. Any overtime worked could be compensated for in time off. The real issue before us is whether plaintiff had a vested right to be paid for unused compensatory time upon termination of his employment with the defendant. On this point, the ordinances and regulations are not clear.

Plaintiff bases his argument on the following language from Resolution #66-33(A): "All compensatory time earned by employees prior to the adoption of these rules shall remain credited to them". Plaintiff contends that by using this language and by paying him for 80 hours, the city recognized his right to be paid for all his unused compensatory time. We agree that this is one possible interpretation of this language. We do not believe it is the correct interpretation.

Prior to the passage of Resolution #66-33(A), no limit was placed on the number of compensatory

hours an employee could accumulate. The language on which plaintiff relies appears to be recognition by the defendant of the inequities that would have resulted had it stripped employees in plaintiff's classification of hours they had accumulated in excess of the 80-hour limitation. There is nothing in the language of the 1966 resolution approving the payment of any monies for unused hours. It is important to note that plaintiff has offered nothing to counter defendant's argument that prior to 1966, employees were not paid for their unused compensatory time at termination. Only after Resolution #66-33(A) was passed did this practice begin. In fact, when he retired, plaintiff accepted defendant's payment for 80 hours without complaint. Further, plaintiff participated in drafting the 1960 regulation and argued at that time for changing the word "may" to "shall". This indicates he understood that taking compensatory time off was not a matter of right. Given the history of the ordinances and regulations in question and the understanding of how overtime was to be paid to employees in plaintiff's position which existed during the years of his employment, we cannot say that defendant's interpretation of the challenged language is unreasonable or incorrect. See *Satterley v City of Flint,* 373 Mich 102 (1964). Plaintiff has no vested right to be paid for his unused compensatory time.

Plaintiff nevertheless contends that defendant should be estopped from denying a duty to pay him for the time in question. He claims that this estoppel is created by the city's having accumulated his compensatory time over the years, giving him notice of the accumulated time annually, and allowing him a portion of this time as time off during his employment. We cannot accept this

argument. An estoppel arises only when a party acts to induce another to believe that certain facts exist and the other rightfully relies and acts on such a belief to his detriment if the former is allowed to deny such facts. *Holt v Stofflet,* 338 Mich 115 (1953). Plaintiff has not proven nor alleged any action on the part of defendant or any of its officials which induced him to believe that he would be paid for his unused compensatory time at retirement. This is not a proper case for invoking the estoppel doctrine against defendant.

Affirmed.

LESINSKI, C. J., concurred.

TARGONSKI, J. *(dissenting).* For purposes of this dissent I accept the majority's statement of facts with some modification. It is important to note that the resolution limiting the accumulation of overtime recognized the existence and the validity of the already accumulated overtime. Vouchers were given certifying the portion remaining unused. It is vital to the disposition of this case to recognize that, while the resolution provided for compensatory time off, this time could be liquidated only with the concurrence of the city manager. There were occasions where he refused to consent to the liquidation of overtime. As a consequence, the plaintiff in this cause was precluded from liquidating his overtime by way of compensatory time off prior to his forced retirement under the terms of the retirement program which the city has for its employees. Application for extension was denied.

Further, there was testimony that indicated that some employees, in the same category as the plaintiff, had been paid for their compensatory time in excess of 80 hours in order to reduce their accumu-

lated compensatory hours to 80. These payments
and adjustments were made shortly after the new
ordinance was passed. Also, we deem it significant
that upon the plaintiff's retirement the city did
pay him for 80 hours of the overtime although the
resolution and applicable ordinances are silent on
any authority for payment for any overtime. It is
significant that in its past dealings with its em-
ployees, the city has recognized that overtime may
be paid for in money. There is no valid reason
shown why a limit of 80 hours must be placed on
this payment. An acceptance of services implies a
promise to pay therefor at the established rate.
*Detroit v Highland Park,* 326 Mich 78, 99 (1949).
The city cannot retain the benefits of the plaintiff's
services without compensation therefor. *DiPonio v
Garden City,* 320 Mich 230, 239 (1948).

There was no specific contract to pay money for
services rendered by way of overtime. However,
from all of the attendant facts, we believe a con-
tract must be implied between these parties. To do
otherwise would be to change the contract of
employment. That such a change cannot be made
unilaterally is set forth in 43 Am Jur Public
Officers, § 348, pp 140–141, which provides as fol-
lows:

"But' after services have been rendered by a public
officer under a law, resolution, or ordinance which fixes
the rate of compensation, there arises an implied con-
tract to pay for those services at that rate. There is in
such case a completed contract the obligation of which
is perfect and rests on the remedies the law gives for its
enforcement. This obligation cannot be impaired by any
act of the legislature or other body changing the com-
pensation of the office."

43 Am Jur, Public Officers, § 348, cited above,
based on all of the facts of this case, in my opinion

establishes the existence of an implied contract in
this case. The law of implied contracts in Michigan
was summarized in *Moll v Wayne County,* 332
Mich 274, 278–279 (1952), as follows:

" 'There are 2 kinds of implied contracts: one implied
in fact, and the other implied in law. *The first does not
exist unless the minds of the parties meet,* by reason of
words or conduct. The second is quasi or constructive,
and does not require a meeting of minds, but is imposed
by fiction of law, *to enable justice to be accomplished,*
even in case no contract was intended.

" 'In order to afford the remedy demanded by exact
justice and adjust such remedy to a cause of action, the
law sometimes indulges in the fiction of a quasi or
constructive contract, with an implied obligation to pay
for benefits received. The courts, however, employ the
fiction with caution, and will never permit it in cases
where contracts, implied in fact, must be established, or
substitute one promissor or debtor for another.' *Casca-
den v Magryta,* 247 Mich 267 [270 (1929)], quoted with
approval in *Detroit v Highland Park,* 326 Mich 78 [100
(1944)].

" 'A contract implied in law is quasi or constructive,
and does not require a meeting of minds, but is imposed
by fiction of law to enable justice to be accomplished,
even where no contract was intended.

*  *  *

" 'The essential elements of a quasi contractual obli-
gation, upon which a recovery may be had, are the
receipt of a benefit by a defendant from a plaintiff,
*which benefit it is inequitable that the defendant re-
tain.' Herrmann v Gleason* 126 F2d 936 [939, 940 (CA 6,
1942)]." (Emphasis in original.)

Plaintiff here rendered valuable services to the
defendant which services were accepted by the
defendant. What the plaintiff may have thought as
to his right to compensation for accumulated com-
pensatory hours is irrelevant and immaterial.
What is important is the action of the defendant

city itself. The important point specifically is the fact that the defendant city decreased some of the Group 2 employees' accumulation to 80 hours and paid them for the amount decreased shortly after the adoption of the ordinance in question. This action was in addition to the actions set forth hereinabove with reference to this plaintiff and other similarly situated employees in his group classification.

There is no question based on the record, and such fact is not contested by the defendant city, that the plaintiff at the time of his retirement was not compensated for 866-1/2 hours credited to his compensatory overtime account. Based on his final salary, a debt of $5,540.63 was due and owing to the plaintiff. This matter should be remanded to the circuit court for entry of a judgment in that amount plus interest from date of retirement to date of payment. As a matter of public policy, the good faith of government in its treatment of its contractual obligations should never be less sacred than that of individuals. *Webb v Wakefield Twp,* 239 Mich 521, 527 (1927). I would therefore reverse and remand.