*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMY VERSLUIS YOUNG,

Plaintiff-Appellant,

v

TERESA VANDERMEER, PETER D.
VANDERMEER, and GRAND CONNECTION,
LLC,

Defendants-Appellees.

UNPUBLISHED
February 25, 2021

No. 349093
Kent Circuit Court
LC No. 16-004519-CB

Before: SHAPIRO, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

This dispute arises from the court-ordered dissolution of Grand Connection, Inc. (GCI). Plaintiff Amy Versluis Young and defendant Teresa VanderMeer each owned 50% of the corporation. Young appeals the trial court's order granting the motions for summary disposition by defendants, Teresa VanderMeer, Peter D. VanderMeer,[1] and Grand Connection, LLC (GCLLC). For the reasons stated in this opinion, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

### A. DISSOLUTION PROCEEDINGS

Young and VanderMeer formed GCI in 1999 to provide clients with event planning and management services. They used independent contractors—called project managers—to run each event. They were very successful: they developed a loyal client base, had several regular project

---

[1] The claims and events at issue primarily involve Teresa VanderMeer, rather than Peter VanderMeer. Therefore, we refer to Teresa VanderMeer as VanderMeer. When necessary, we refer to Peter VanderMeer by his first name.

-1-

managers, and had a steady stream of income. Unfortunately, Young and VanderMeer's relationship deteriorated over time, and they began to disagree over the direction of the business.

In January 2014, Young sued VanderMeer and GCI, seeking judicial dissolution of the company. Young was GCI's president and treasurer, but she alleged that VanderMeer, GCI's vice president and secretary, had taken control of GCI's financial affairs, excluded her from GCI's website host and email server, and was exercising authority that was properly vested in Young as president. Young alleged that she and VanderMeer were no longer able to agree on material matters respecting the management of the corporation. In addition to dissolution, Young requested an accounting.

In February 2014, trial court entered a temporary injunction to address Young and VanderMeer's intent to form new competing business. The injunction, in relevant part, prohibited Young and VanderMeer from discussing new projects or events with current or prospective clients without giving notice to one another of the substance of the communication. Further, Young and VanderMeer could not discuss their individual business ventures with GCI's current clients or contractors. The injunction also barred GCI from entering into contracts for new projects or events without the written consent of both Young and VanderMeer.

After a three-day evidentiary hearing, in June 2014 the trial court entered a verdict for dissolution. The primary concern for the dissolution involved winding up GCI's existing obligations to its clients, which the court and parties referred to as GCI's "pipeline projects." At the hearing, VanderMeer admitted an exhibit (exhibit 18) into evidence showing all of GCI's remaining projects. The court instructed VanderMeer to select the project managers for each pipeline project. It stated that the profits from each event should be used to pay the project manager first, and the remainder should be turned over to GCI's accountant, Scott Smith, for distribution to the shareholders in equal shares. The court stated that the parties had agreed that Smith would be appointed as GCI's receiver to oversee the corporation's remaining financial obligations. Finally, the court stated that GCI's "core components"—its trade name, goodwill, website, software license, and inventory of design décor—would be auctioned at a sealed-bid auction to Young and VanderMeer.

Young and VanderMeer began to disagree on what constituted a pipeline project belonging to GCI. After a motion brought by VanderMeer, in June 2014 the trial court ordered the dissolution of the temporary injunction entered in February 2014 precluding the parties from discussing their new businesses with GCI clients, but the court ordered that "any opportunity presented to any party prior to the announcement of the winning bid that involves an existing GCI client shall be given to GCI as a pipeline project." The court further clarified that the pipeline projects included all projects that GCI "secured" before the court announced the winning bid for the auction. On July 21, 2014, the trial court announced that VanderMeer had won the sealed-bid auction.

Also in July 2014, Smith sent a list of GCI pipeline projects to Young and VanderMeer, which the parties refer to as the "July pipeline report." The parties discussed and negotiated what should be included on that list. In August 2014, Smith sent an e-mail to Young and VanderMeer with a proposed resolution of the pipeline projects that expressly excluded four projects that would have otherwise belonged to GCI. Both Young and VanderMeer agreed with Smith's proposed resolution. In April 2015, Smith sent VanderMeer and Young an e-mail detailing the final matters

to be wound up for GCI and a summary of the final distribution to the shareholders. The e-mail informed the parties that all pipeline projects had been completed and payment for those projects had been received. Both parties agreed with Smith's final resolution of GCI.

Smith was ordered to appear for testimony in September 2015 that would serve as a substitute for filing a final report. Before the hearing, Young obtained GCI's final accounting records compiled by Smith. After the hearing, Young retained a forensic accountant, Mark Stephanic, to examine GCI's final accounting records and other relevant materials. According to Stephanic, there were several jobs that appeared on lists of pipeline projects for which GCI did not receive any profits. On the basis of Stephanic's report, Young filed a motion to amend her complaint for dissolution to include new claims against VanderMeer premised on allegations that she and her new company, GCLLC, misappropriated pipeline projects and business opportunities that belonged to GCI. Young also sought to reopen discovery in the dissolution case. After a hearing in March 2016, the trial court denied Young's motion. The court did not want to reopen the dissolution case and advised Young that she could either file a motion for civil contempt under MCR 3.606 on the basis of VanderMeer's alleged violation of the court orders or could file a new lawsuit.

## B. SECOND ACTION

In May 2016, Young filed the instant lawsuit against VanderMeer, VanderMeer's husband Peter, and GCLLC. Young alleged that VanderMeer, with the aid of Peter, diverted business from GCI to GCLLC and that VanderMeer violated the trial court's February 2014 injunction. Young asserted that VanderMeer's diversion of business to GCLLC amounted to a breach of fiduciary duties and unjust enrichment.

VanderMeer, Peter, and GCLLC responded to the new complaint with a motion for summary disposition. In September 2016, the trial court entered an order granting in part and denying in part defendants' motion. The court dismissed the count alleging violation of the February 2014 injunction, concluding that there was no independent civil action for damages premised on the violation of an injunction. The court agreed, however, that Young could proceed with her claim of breach of fiduciary duty, but limited the claim to acts occurring before July 21, 2014—the date VanderMeer was announced as the winner of silent auction. As for the claim of unjust enrichment, the court stated that it would treat the August 2014 list of pipeline projects compiled by Smith and approved of by Young and VanderMeer as a binding agreement concerning the pipeline projects. Because there was a contract governing the pipeline projects, the court reasoned, Young could not maintain a claim of unjust enrichment. The court's dismissal was without prejudice to Young filing a motion in the previous case for civil contempt or to amending her complaint to state a claim of breach of contract premised on the agreement concerning the pipeline projects.

Young filed an amended complaint in October 2016, restating many of the same allegations that she stated in her previous complaint. In new allegations, Young asserted that VanderMeer restructured several projects that should have been treated as pipeline projects and transferred those "sub-jobs" to her new business. She also identified records that she felt suggested that other projects were not handled consistent with the trial court's orders. On the basis of these allegations, Young asserted nine claims: conversion, statutory conversion, misappropriation of corporate

-3-

opportunities, fraud and misrepresentation, silent fraud arising from VanderMeer's failure to disclose that she renewed an expensive software license before the auction, shareholder oppression, tortious interference, civil conspiracy, and unjust enrichment.

Although the trial court modified an initial protective order after deciding the defendants' initial motion for summary disposition, it continued to preclude Young from conducting broad discovery. The court worried that the parties might jeopardize their businesses if it allowed discovery to expand to include existing clients. Accordingly, the trial court denied Young's request to depose current and former employees of clients who had done business with GCI. The court reiterated that it would not allow the parties to use discovery to harm the relationships with customers. The court felt that the expanded discovery would be adequate to determine whether there was support for Young's claims.

Discovery established that there were three categories of corporate opportunities that Young believed should have been treated as pipeline projects belonging to GCI. First, there were projects that were listed on either exhibit 18 admitted at the evidentiary hearing or the July pipeline report that ultimately went to GCLLC instead of GCI. The second category concerned what the parties refer to as "hotel contracts." These are contracts between GCI's clients and hotels for events that GCI was to manage; the contracts required the hotels to pay a commission to GCI. Young argued that all hotel contracts executed before July 21, 2014, for events that occurred thereafter should have been treated as pipeline projects and that VanderMeer failed to disclose numerous such contracts. The third category were master service agreements executed between GCI and clients that extended beyond July 21, 2014. These agreements provided general terms that would govern any event that GCI and the client entered into during the duration of the agreement. Young maintained that VanderMeer failed to disclose the master agreements and improperly diverted "sub-jobs" that would have been governed by these agreements to GCLLC. In January 2017, Stephanic authored a supplemental report concluding that GCLLC had profits of $493,946 from projects that—in his view—should have been treated as pipeline projects of GCI.

In moving for summary disposition under MCR 2.116(C)(10) (no genuine issue of a material fact), VanderMeer and GCLLC argued that Young fully understood the nature of GCI's business, its contracts, and its client base. VanderMeer and GCLLC presented evidence that, other than some minor errors by Smith,[2] all the projects that actually occurred before July 21, 2014, were handled through GCI. VanderMeer generally argued that Young, as president of GCI, could have discovered any hotel contracts and service agreements but failed to do so. VanderMeer also argued that the hotel contracts and sub-jobs that would have been covered by a master agreement were not pipeline projects. As to the projects that were listed on exhibit 18 or July pipeline report but were not included on the final list compiled by Smith in August 2014, VanderMeer argued that Young "negotiated away" those projects.

In response, Young maintained that there was no specific negotiation or discussion regarding the projects that she was now claiming as GCI pipeline projects. Young explained that

---

[2] VanderMeer conceded that the receiver misapplied three projects to GCLLC that should have gone to GCI. VanderMeer requested that the court enter a judgment in Young's favor as to these projects and allocate 50% of these profits to her.

she assumed that projects that were previously listed but omitted from the final project list were either completed or cancelled by the time she and VanderMeer agreed to the list sent to them by Smith in August 2014. As to the argument that she had the capability of discovering the hotel contracts and master agreements, Young contended that this overlooked that she filed for dissolution because she was being shutout of GCI by VanderMeer and that she had diligently pursued information regarding the hotel contracts during the dissolution proceedings.

Peter also moved for summary disposition under MCR 2.116(C)(10). He presented evidence that his only participation in any of the events at issue involved some clerical work to help VanderMeer. He indicated that he was not a shareholder, employee, or officer of any of the companies at issue. And when he came into possession of checks, he deposited them consistent with the invoice prepared by Smith. Peter maintained that Young had no evidence that he converted any checks or funds, participated in a civil conspiracy, or was unjustly enriched. In response, Young relied on evidence suggesting that Peter was integrally involved in GCLLC.

The trial court entered an opinion and order granting the motions for summary disposition. Although the court generally discussed the evidence noted in defendants' motions for summary disposition, it did not rely on that evidence in deciding the motions. Specifically, the court did not decide whether there were material questions of fact on whether VanderMeer diverted corporate opportunities from GCI. Instead, the trial court independently determined that Young's claims should be dismissed because of defects the court identified.

## II. ANALYSIS

## A. SUMMARY DISPOSITION

Young argues that the trial court erred by dismissing her claims, aside from silent fraud, which she has abandoned. We conclude that trial court correctly dismissed the claims of conversion, civil conspiracy and all claims against Peter. However, we reverse the grant of summary disposition as to the claims of shareholder oppression, misappropriation of corporate opportunities, fraud and misrepresentation, tortious interference and unjust enrichment.[3]

---

[3] We review de novo a trial court's decision on a motion for summary disposition. See *Cotton v Banks*, 310 Mich App 104, 111; 872 NW2d 1 (2015). Defendants moved for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of a claim. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). However, for nearly all of Young's claims, the court did not grant summary disposition for lack of a material factual dispute but rather for a legal defect that the court sua sponte identified. Young argues that this denied her due process. The trial court had the authority to consider the validity of the claims on its own initiative. See MCR 2.116(I)(1). However, in *Al-Maliki v LaGrant*, 286 Mich App 483, 489; 781 NW2d 853 (2009), we held that the trial court denied the plaintiff of her due process right to a meaningful opportunity to be heard when it sua sponte

## 1. CONVERSION CLAIMS

Young alleged that defendants, acting through Peter, converted checks belonging to GCI. Discovery revealed that Young was not alleging that defendants asserted ownership of checks made to GCI. Rather, this claim is derivative of Young's more general allegation that defendants wrongfully diverted corporate opportunities from GCI. That is, the conversion claim relates to funds paid to GCLLC for events it managed that Young maintains should have been treated as pipeline projects belonging to GCI. The trial court dismissed the conversion claims because it concluded that the diversion of business opportunities does not involve personal property that was capable of being converted. We agree, and further conclude that GCI did not have a right to the proceeds from the projects that were allegedly diverted to GCLLC such that it could maintain a conversion action for those amounts.

"Under the common law, conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 346; 871 NW2d 136 (2015). Common-law conversion protects a person's superior right to personal property. See *Thoma v Tracy Motor Sales, Inc*, 360 Mich 434, 438; 104 NW2d 360 (1960). See also *Magley v M&W, Inc*, 325 Mich App 307, 314 n 3; 926 NW2d 1 (2018) (stating that statutory conversion encompasses the elements of common-law conversion with an added element). Thus, to establish her claims for conversion, Young first had to demonstrate that she or–assuming that she could assert GCI's rights to any personal property that it might have had—GCI had a superior interest in the personal property at issue. She then had to show that VanderMeer, Peter, and GCLLC wrongfully exercised dominion over that property.

Young could not establish that she or GCI had a superior right to the fees and commissions earned by GCLLC for events it managed. While Young alleges that business opportunities were improperly diverted to GCLLC, the fact remains that GCLLC performed the work and earned the fees and commissions and had title to the payments for its services. This is true even though there may have been third-party agreements that identified GCI as the payee of commissions for the hotel bookings (on the assumption that GCI would perform the bookings) because there was no evidence that the third-party agreements gave GCI an unqualified property interest in identifiable

---

dismissed a negligence action on the issue of causation after the defendant had conceded the issue of causation for purposes of its motion for summary disposition. Moreover, the court "was dismissive of plaintiff's counsel and did not consider evidence plaintiff attempted to provide orally regarding causation in attempt to avoid summary disposition" and then denied a motion for reconsideration without addressing the new evidence presented on causation. *Id*. In contrast, in this case the trial court discovered what it deemed to be legal defects in Young's claims after oral argument and Young did not file a motion for reconsideration. In any event, in the interests of judicial economy, we will review de novo the trial court's rulings in light of the arguments that Young makes on appeal. See *Conlin v Upton*, 313 Mich App 243, 254; 881 NW2d 511 (2015) (questions concerning application of the common law are reviewed de novo); *Hayford v Hayford*, 279 Mich App 324, 325; 760 NW2d 503 (2008) (questions of statutory interpretation are reviewed de novo).

proceeds, which then had to be delivered to GCI notwithstanding that another business performed the services. See *Garras v Bekiares*, 315 Mich 141, 148; 23 NW2d 239 (1946) ("Trover is not maintainable for money unless there be an obligation on the part of the defendant to return the specific money intrusted to his care.") (quotation marks and citation omitted). Accordingly, the trial court did not err when it dismissed Young's conversion claims.

## 2. CIVIL CONSPIRACY

We next address Young's argument that the trial court erred when it dismissed her civil-conspiracy claim. The trial court determined that Young's claim against Peter must fail because the record contained "nothing to indicate that the VanderMeers engaged in criminal acts by dealing with customers of GCI." It is well settled that "[a] civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins Co v Columbia Cas Ins Co*, 194 Mich App 300, 313; 486 NW2d 351 (1992). It can be implied from the trial court's ruling that it determined that Young did not identify a criminal or unlawful purpose sought by the VanderMeers and that the VanderMeers did not seek to accomplish a lawful purpose through criminal or unlawful means. However, there is also Michigan caselaw holding that a civil conspiracy may be shown by proof that the defendants acted in concert to accomplish some underlying tortious act. See e.g., *Urbain v Beierling*, 301 Mich App 114, 131-132; 835 NW2d 455 (2013). Young focuses on this caselaw, and argues that she only had to show that VanderMeer and Peter acted together to commit a tortious act. However, even assuming that Young only needed to show that Peter and VanderMeer acted in furtherance of a common plan to commit an underlying tort, we conclude that she failed to establish a material question of fact on that matter.

Peter moved for summary disposition and presented evidence that he did not act in furtherance of a plan to commit a tort—namely, he presented evidence that he performed ministerial tasks in order to help VanderMeer with day-to-day operations and without any knowledge that the acts were tortious. In response, Young argued that the evidence showed that Peter invoiced GCLLC for services that were more sophisticated than the ministerial tasks that he claimed in his motion for summary disposition. Young also cited Smith's testimony that Peter would consult with Smith about GCI and GCLLC, and she discussed evidence that Peter was involved in the depositing of checks. Young further noted that Peter would benefit from any income earned by VanderMeer because he was married to VanderMeer, and she noted that Peter frequently referred to himself and VanderMeer with the first-person plural.

Young's evidence concerning Peter's involvement does not permit an inference that he acted in concert with VanderMeer to commit any underlying tort. At most, Young's evidence permitted an inference that Peter had a motive and opportunity to do so. As already discussed, there was no evidence that GCI owned any personal property—whether checks, identifiable funds, or other property—that VanderMeer or Peter converted. The fact that he deposited checks does not amount to evidence that he acted with the requisite knowledge and intent to commit any of the other identified torts. See *Rosenberg v Rosenberg Bros Special Acct*, 134 Mich App 342, 354; 351 NW2d 563 (1984). Young's assertions about Peter's knowledge and intent were not supported by evidence and she could only offer speculation regarding her claim that Peter engaged in a conspiracy with VanderMeer to commit an unlawful act or tort. Thus, the trial court correctly dismissed the conspiracy claim as it applied to Peter. See *Skinner v Square D Co*, 445 Mich 153,

164, 172-173; 516 NW2d 475 (1994) (stating that speculation is not enough to survive a motion for summary disposition). Because the trial court did not err when it dismissed Young's conspiracy claim against Peter, dismissal of the conspiracy claim against VanderMeer was also appropriate because there are no other conspirators to establish the claim. *Blair v Checker Cab Co*, 219 Mich App 667, 674; 558 NW2d 439 (1996) (explaining that there can be no conspiracy between an artificial entity and those in control of the entity).

The only remaining count with allegations against Peter was unjust enrichment. However, in the absence of any evidence supporting an inference of wrongdoing against Peter, he was not unjustly enriched by merely being married to VanderMeer. The trial court properly dismissed Young's claims against Peter.

### 3. SHAREHOLDER OPPRESSION

Next, the trial court dismissed Young's claim for shareholder oppression because Young was not a minority shareholder. We agree with Young that the trial court erred by dismissing her claim on this ground.

MCL 450.1489 of the Business Corporation Act, MCL 450.1101, *et seq.*, provides that "[a] shareholder" may bring what is known as a direct action "to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder." See MCL 450.1489(1). The statute does not contain the word "minority," but courts have described the statute as allowing for actions by "minority shareholders," see e.g., *Madugula v Taub*, 496 Mich 685, 697; 853 NW2d 75 (2014), presumably because only minority shareholders are vulnerable to oppression, see *Estes v Idea Engineering & Fabrications, Inc*, 250 Mich App 270, 278; 250 Mich App 270 (2002) (describing MCL 450.1489 as a "statutory cause of action for 'oppression' in favor of minority shareholders who are abused by 'controlling' persons . . . ."). However, we are not aware of any case *holding* that the statute is only available to minority shareholders. And we may not read language into an unambiguous statute. See *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019).

Further, Young alleged that VanderMeer was in control of GCI, notwithstanding that Young owned 50% of the outstanding shares and was on the board of directors with VanderMeer. Young also cited evidence in response to defendants' second motion for summary disposition that supported the claim that VanderMeer had been exercising control over GCI during the dissolution process. Because there was evidence that VanderMeer was in control of GCI at the time of the alleged acts of shareholder oppression, the trial court erred when it dismissed Young's claim on the ground that she was not a minority shareholder. Young did not need to prove that she was a minority shareholder; she only needed to show VanderMeer was in control of GCI during the relevant time frame.

### 4. MISAPPROPRIATION OF CORPORATE OPPORTUNITIES

Next, we agree with Young that the trial court erred by dismissing her claim for misappropriation of corporate opportunities. It is undisputed that VanderMeer was a director and officer of GCI and that she owed GCI a strict duty to act in good faith. See MCL 450.1541a. This

-8-

included a duty not to divert corporate business opportunities for her own gain. See *Prod Finishing Corp v Shields*, 158 Mich App 479, 485-486; 405 NW2d 171 (1988). However, the trial court determined that any of the opportunities at issue belonged to GCI and that Young could not assert a claim for the misappropriation in her own name. Because Young did not follow the statutory requirements for a bringing a derivative lawsuit asserting the rights of GCI, MCL 450.1493a, the trial court dismissed her misappropriation claim.

Young does not dispute that a diversion of corporate opportunities claim generally belongs to the corporation. However, relying on *Christner v Anderson, Nietzke & Co, PC*, 433 Mich 1; 444 NW2d 779 (1989), she argues that an exception exists when the plaintiff suffered an injury that was separate and distinct from that of the other shareholders generally. In *Christner*, a direct claim by a shareholder for breach of fiduciary duty was allowed when the other shareholders elected to dissolve a corporation and distribute its assets to each other to the exclusion of the plaintiff shareholder. *Id*. at 8-9. Because all other shareholders, "either personally . . . or *indirectly through the new firms*," received a distribution of assets, the plaintiff could bring an individual action. *Id*. at 9 (quotation marks and citation omitted; emphasis added).

In this case, assuming for purposes of summary disposition that VanderMeer breached her duty of good faith to GCI by causing GCLLC to manage events that might have been managed by GCI, the resulting loss of revenue injured Young in a way that was separate and distinct from that suffered by the other shareholder, Young. To be sure, as shareholders, both Young and VanderMeer lost the benefit of any distributions that would have been made had GCI profited from managing those events. However, to the extent that VanderMeer improperly directed events away from GCI to GCLLC, she in effect prevented Young from having an equal share in the profits from managing those events, while she continued to enjoy the profits from those events through GCLLC. Under those facts, Young adequately established that she suffered an injury that was separate and distinct from that of the other shareholder. For that reason, the trial court erred when it determined that Young could not bring a claim for breach of fiduciary duty in her own name.

## 5. FRAUD AND MISREPRESENTATION

The trial court dismissed Young's claim of fraud and misrepresentation on two grounds. First, it stated that Young could not rely on the withholding of information to establish an actionable claim for fraud or misrepresentation. Second, it determined that Smith's affirmative statements could not be attributed to VanderMeer—even if they amounted to fraud or misrepresentations—because he was acting as the receiver at the time, and not as VanderMeer's agent. We agree with Young that the court failed to give a fair reading of her complaint.

While Young alleged that VanderMeer withheld information as to projects presented to GCI before July 21, 2014, she also alleged that VanderMeer made material misrepresentations. In pertinent part, Young alleged, "Defendant Teresa VanderMeer, either directly, through her attorneys, or through her agent Scott Smith, made material misrepresentations to Plaintiff as to the number and scope of GCI projects then in the pipeline . . . ." The trial court apparently disregarded the allegation that VanderMeer "directly" made misrepresentations and focused on the allegation that VanderMeer indirectly made misrepresentations through Smith. Defendants moved for summary disposition under MCR 2.116(C)(10), but they did not argue that there was no evidence that VanderMeer made direct misrepresentations. The trial court essentially decided this claim on

-9-

the pleadings, and as such the court could not simply disregard the allegation of direct misrepresentation. Further, even though Smith was not acting as VanderMeer's agent in his capacity as receiver, a claim of fraudulent misrepresentation may be maintained for representations made through a third party:

> The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved. [Restatement Torts, 2d, § 533, pp 72-73.]

For these reasons, the trial court erred by dismissing the claim of fraud against VanderMeer.

## 6. TORTIOUS INTERFERENCE

The trial court granted summary disposition of the tortious-interference claim because it determined that Young did not identify any evidence that VanderMeer did something illegal, unethical, or fraudulent. See *Dalley v Dykema Gossett*, 287 Mich App 296, 324; 788 NW2d 679 (2010) ("[I]n order to succeed under a claim of tortious interference with a business relationship, the plaintiffs must allege that the interferer did something illegal, unethical or fraudulent.") (quotation marks and citation omitted). Young maintains that she presented evidence of sufficient improper behavior, specifically that VanderMeer violated court orders, breached her fiduciary duties to GCI and made fraudulent misrepresentations. Had the trial court held that Young had not established a material question of fact on those underlying claims, then we might agree that dismissal of the tortious-interference claim was appropriate. However, given that we are reversing the dismissal of the claims of shareholder oppression, misappropriation of corporate opportunities, and fraud, we see no basis to uphold the trial court's ruling that there was no evidence to support a claim of tortious interference. Accordingly, we also reverse dismissal of this claim.

## 7. UNJUST ENRICHMENT

Young also argues that the trial court erred when it dismissed the unjust-enrichment claim on the ground that there was an explicit contract between Young and VanderMeer governing what constituted a pipeline project. The trial court relied on the August 2014 email where Young signed off on the final list of pipeline projects presented by the receiver following extended discussions on the matter. Young argues that the trial court erred by finding that this list constituted a binding contract. We decline to resolve this question because the rule of law relied on by the trial court is inapplicable to Young's claim.

*Martin v East Lansing School Distr*, 193 Mich App 166, 177; 483 NW2d 656 (1992) is cited for the proposition that "[a] claim of unjust enrichment does not apply if there is an express contract." *Able Demolition*, 275 Mich App 577, 586 n 4; 739 NW2d 696 (2007). In *Martin*, we held that the plaintiff-teachers could not maintain an action for unjust enrichment for increase payment of their services because their employment relationship with the school was governed by a contract:

> Plaintiffs assert that defendant district has been unjustly enriched by receiving the services of the more qualified and experienced teachers without paying compensation for such services by reason of the red-circling freeze. In such instances, the law implies a contract to prevent unjust enrichment, which occurs when one party receives a benefit from another the retention of which would be inequitable. *In re McCallum Estate*, 153 Mich App 328, 335; 395 NW2d 258 (1986).
>
> However, a contract will be implied only if there is no express contract. *Campbell v City of Troy*, 42 Mich App 534, 537; 202 NW2d 547 (1972). In the present case, the individual contracts made with plaintiffs were expressly subject to the terms and conditions of the master agreement. [*Martin*, 193 Mich App at 177-178.]

The rule that the law will not imply a contract when an express contract exists prevents "an express and implied contract covering the same subject matter at the same time." *Campbell*, 42 Mich App at 538.

In this case, however, Young is not seeking to imply a quasi-contract between her and VanderMeer. Rather, Young is alleging that VanderMeer and GCLLC were unjustly enriched by the diversion of business opportunities away from GCI and that it would be inequitable for them to retain that benefit. As the Supreme Court recently explained, "[q]uasi-contract doctrine is . . . a subset of the law of unjust enrichment." *Wright v Genesee Co*, 504 Mich 410, 421; 934 NW2d 805 (2019). "Thus, while all quasi-contract is premised on unjust enrichment, not all unjust enrichment is quasi-contract." *Id*. at 422. The Court explained the broad nature of unjust enrichment:

> Unjust enrichment has evolved from a category of restitutionary claims with components in law and equity into a unified independent doctrine that serves a unique legal purpose: it corrects for a benefit received by the defendant rather than compensating for the defendant's wrongful behavior. Both the nature of an unjust-enrichment action and its remedy—whether restitution at law or in equity—separate it from tort and contract. [*Id*.]

Because Young is not seeking to imply a quasi-contract between her and VanderMeer, the rule that precludes implying contracts when an express contract exists is not relevant to her claim of unjust enrichment. Accordingly, the trial court erred by dismissing Young's unjust-enrichment claim on that basis.[4]

---

[4] Young also argues that the trial court erred to the extent that it dismissed her claims against defendants on the ground that the exclusive remedy for the violation of the court's orders in the dissolution case was to move for a civil contempt proceeding under MCR 3.606. However, the trial court did not state that it was dismissing any of her claims on that ground. Rather, the trial court identified separate bases for dismissing each claim, as discussed. Further, while the court's

## IV. DISCOVERY

We finally address Young's claim that the trial court improperly limited her discovery.[5]

Generally, the parties to a case may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defenses. See MCR 2.302(B)(1). Nevertheless, courts must also protect the interests of the party opposing discovery to prevent discovery that is excessive, abusive, or irrelevant. See *Planet Bingo, LLC v VKGS, LLC*, 319 Mich App 308, 327; 900 NW2d 680 (2017). See also MCR 2.302(B)(1) (stating that the discovery should be "proportional to the needs of the case").[6] To that end, the parties to the litigation may seek an order to protect that party from annoyance, embarrassment, oppression, or undue burden. See MCR 3.302(C).

In this case, the trial court initially barred Young from conducting any discovery until after it addressed defendants' first motion for summary disposition. It later expanded discovery to allow Young to obtain GCLLC's bank records, other business records, and allowed Young to depose persons who formerly worked for GCI and others who worked for GCLLC. The trial court also allowed Young to obtain records from the hotels that GCI's clients used for their events.

The record showed that the trial court carefully balanced Young's right to conduct discovery relevant to her theory of liability against GCLLC's right to be free of vexatious discovery that might harm its business relationships. Young had access to the business records for GCI and GCLLC. The trial court also allowed Young to depose key personnel from GCI and GCLLC who would have been involved in the management of events that were allegedly diverted to GCLLC. As such, the trial court allowed Young to conduct meaningful discovery that was reasonably calculated to result in the discovery of evidence consistent with her theory of the case. Indeed, according to her expert, evidence of the diversion of corporate opportunities showed that GCI lost nearly half a million in profits. The discovery authorized by the trial court might also reasonably be expected to reveal whether a project had been offered to GCI during the relevant time period but was diverted to GCLLC. Consequently, the discovery that the trial court permitted provided ample opportunity to discover evidence in support of Young's claims.

On appeal, Young accurately points out that the persons who worked for GCI's former clients and who served as the contact persons for the events would likely have personal knowledge

---

orders frame Young's claims, VanderMeer had a fiduciary duty to GCI independent of any order. And violation of a court order is not necessary to showing shareholder oppression, fraud, tortious interference, or unjust enrichment.

[5] We review for an abuse of discretion a trial court's decision to limit discovery. See *Planet Bingo, LLC v VKGS, LLC*, 319 Mich App 308, 320; 900 NW2d 680 (2017). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*. We review de novo whether the trial court properly interpreted and applied the relevant court rules. See *Franks v Franks*, 330 Mich App 69, 86; 944 NW2d 388 (2019).

[6] The current version of MCR 2.302(B)(1) did not become effective until January 1, 2020.

of interactions with VanderMeer that might have shed light on how it came to pass that those former clients of GCI became current clients of GCLLC. But that alone does not automatically demonstrate that the trial court abused its discretion when it precluded Young from deposing those persons. The trial court aptly noted at various points that Young and VanderMeer had become direct competitors. It further stated that it would not permit Young to use the discovery process to gain a competitive advantage or to harass GCLLC's clients.[7]

The trial court had the authority to protect VanderMeer and GCLLC by preventing discovery that, although involving relevant material, might pose an undue burden or amount to harassment or oppression. See MCR 2.302(C). See also *Muci v State Farm Mut Auto Ins Co*, 478 Mich 178, 193-194; 732 NW2d 88 (2007) (stating that the trial court must fashion the limitations on discovery to prevent the harm sought to be avoided—namely, to prevent the annoyance, embarrassment, or oppression). Because it correctly determined that the expanded discovery that it had authorized presented Young with a meaningful opportunity to support her claims, it was not absolutely necessary to depose GCI's former clients or their employees; and, for that reason, the trial court could reasonably conclude that any benefit from doing so was outweighed by the potential harm to VanderMeer and GCLLC. See *Szpak v Inyang*, 290 Mich App 711, 715-716; 803 NW2d 904 (2010) (recognizing that the protections stated in an order must be designed to prevent a specific danger and that there must be evidence to support a reasonable concern that the harm at issue will occur if discovery is allowed).

The trial court was intimately familiar with the parties, their dispute, and the evidence that had already been revealed through discovery. It also thoroughly knew Young's theory and the type of evidence that would support that theory. Given the trial court's familiarity with the case and the lengthy procedural history of the disputes between these parties, the trial court's balancing of Young's right to conduct discovery against the need to protect the business relationships of VanderMeer and GCLLC fell within the range of reasonable and principled outcomes. Therefore, it did not abuse its discretion.

## V. CONCLUSION

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Peter having prevailed in full may tax his costs; we order that the other parties may not tax their costs because none of the remaining parties prevailed in full. See MCR 7.219(A). We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ David H. Sawyer
/s/ Jane M. Beckering

---

[7] Our ruling might be different if Young had identified specific clients that, on the basis of existing discovery, she believed VanderMeer had improperly diverted from GCI. Young makes no such argument on appeal, however.